The **MASSACHUSETTS DEPARTMENT OF PUBLIC HEALTH, et al.,**
Plaintiffs,

v.

**SCHOOL COMMITTEE OF TEWKSBURY, et al.,**
Defendants.

Civ. A. No. 91–12727–K.

United States District Court,
D. Massachusetts.

June 25, 1993.

Ruth A. Bourquin, Attorney General's Office, Beth D. Levi, Boston, MA, for plaintiffs.

Richard N. Sullivan, Kenney, Conley, Sullivan & Smith, Braintree, MA, for School Committee of Tewksbury.

Richard Howard, Kotin, Crabtree & Strong, Boston, MA, for Mr. and Mrs. K.

### Memorandum and Order

KEETON, District Judge.

This action was brought by plaintiffs Massachusetts Department of Public Health and Massachusetts Department of Education ("plaintiffs") to reverse an order of the Bureau of Special Education Appeals ("BSEA") holding that the Massachusetts Hospital School ("MHS") residential program is the least restrictive and most appropriate special education program for student defendant Christopher K., and ordering the MHS to make modifications to accommodate Christopher.

The parties filed a settlement agreement and stipulation of dismissal with the court on November 5, 1992. The court entered final judgment of dismissal on December 22, 1992.

Now before the court are Christopher K.'s Motion for Attorneys' Fees and Request for Oral Argument, and a supporting memorandum with attachments (Docket Nos. 62 and 64, filed January 21, 1993); Plaintiffs' Memorandum Opposing Fees (Docket No. 67, filed February 26, 1993); and Christopher K.'s Reply Memorandum (Docket No. 75, filed April 7, 1993).

Christopher requests attorneys' fees pursuant to 20 U.S.C. § 1415. That section provides in relevant part that the court has discretion to "award reasonable attorneys' fees as part of the costs to the parents or guardian of a child or youth with a disability who is the prevailing party." 20 U.S.C. § 1415(e)(4)(B). The student defendant contends that he is the prevailing party and requests the court to award him attorneys' fees and costs in the total amount of $137,976.27. (Revised Request for Fees, Reply Mem. at 25.)

Plaintiffs do not contest Christopher's assertion that the court should award him some attorneys' fees. Plaintiffs contest the extent to which Christopher is a prevailing party, however, arguing that the request for attorneys' fees is excessive because (1) Christopher's claims are separable, (2) he only prevailed to a partial extent on one of his claims and not at all on the other, and (3) his attorneys did not exercise responsible billing judgment. Plaintiffs argue generally for a substantial reduction in fees to be awarded because the student defendant's attorneys, in some instances, provided duplicative and unnecessary legal assistance, and used attorneys to perform non-legal tasks.

### I. Background

Christopher K. is an eighteen-year old quadriplegic who depends on a positive pressure ventilator and diaphragmatic pacers in order to breathe. His medical condition requires that a registered nurse or respiratory therapist be immediately available to respond to an equipment malfunction or other life-threatening event. In addition, a physician must be available within minutes at all times. Despite his medical condition Christopher is cognitively and emotionally intact and functions essentially at his appropriate grade level.

In 1989 the Town of Tewksbury, which was then responsible for Christopher's education, applied to the MHS residential program on Christopher's behalf. MHS rejected Christopher because it did not have the medical resources necessary to meet his needs. MHS did, however, accept Christopher into its day educational program on the condition that he be accompanied by an appropriate healthcare professional to intervene in the event of respiratory crisis.

In the Spring of 1990 Christopher's special education team (consisting of the Tewksbury and North Middlesex School Districts) developed an Individual Education Plan ("IEP") for Christopher, as is required by federal and state law. The IEP called for his interim placement at MHS as a day student pending full placement in residence there. Christopher's mother rejected the proposed IEP because it failed to provide Christopher with a residential placement. (Throughout the administrative and litigation phases of this action, Christopher attended the MHS day program.)

The BSEA then held a hearing on Christopher's rejected IEP. The hearing officer concluded that a residential placement at the MHS was the least restrictive and most appropriate special education program for Christopher because it "is the only facility offering comprehensive educational and rehabilitative services to severely, physically-disabled, medically-needy, cognitively intact students." In addition, the parties agreed that Christopher met the criteria for admission to MHS, and that the only reason he was denied admission to the residential program was that MHS could not safely meet his medical needs.

The BSEA hearing officer further concluded that plaintiffs had violated section 504 of the Rehabilitation Act, 29 U.S.C. § 794, by failing to reasonably accommodate Christopher's handicap, thereby excluding him from participation in the only appropriate educational program otherwise available to him. The "accommodations" necessary to permit Christopher to participate in the residential program include 24-hour physician coverage, enhanced nursing and respiratory staff, and minor structural changes to the buildings.

On December 4, 1991, the BSEA hearing officer issued an "implementation order" of her earlier decision. Among other things, the order required the plaintiffs to develop a Section 504 compliance plan and file compliance progress reports no later than the fifteenth day of each month. In these progress reports plaintiffs were to inform the BSEA of the steps they had taken to make the MHS residential program available to Christopher. The order also required the Department of Education ("DOE") to reimburse the school committees for Christopher's educational expenses, including transportation and related services, retroactive to November 1, 1990, and to cover all future expenses associated with Christopher's placement at MHS, including his transportation costs to and from the school until the modifications were completed.

Plaintiffs filed a complaint in state court seeking review and reversal of the BSEA's decision. The defendants then removed the action to this court. In December of 1991 plaintiffs moved for a preliminary injunction staying enforcement of the BSEA's implementation order. At a conference held on January 2, 1992 this court requested submissions on the potentially dispositive issue of whether the BSEA had exceeded its authority in ordering the MHS to make modifications to accommodate Christopher. In addition, upon the request of plaintiffs, the court temporarily stayed the enforcement of the implementation order. Plaintiffs subsequently filed a motion for judgment on the pleadings on the ground that the BSEA had exceeded its authority in ordering the MHS to make modifications.

On February 7, 1992, the court issued a Memorandum and Order denying plaintiffs' motion for judgment on the pleadings. In addition, the court vacated its stay of that part of the implementation order that required plaintiffs to develop a § 504 compliance plan. At a further conference on February 26, 1992, the court made it clear that no stay of any part of the implementation order was in effect.

Plaintiffs then moved, on March 4, 1992, for a preliminary injunction staying the enforcement of that part of the implementation order that required them to begin to create a respiratory care unit at the MHS. They also moved to stay the reimbursement part of the implementation order. North Middlesex, meanwhile, moved the court to compel plaintiffs to comply with the reimbursement part of the implementation order.

The court by Memorandum and Order dated May 20, 1992, allowed in part and denied in part plaintiffs' motion for a preliminary

injunction. The court stayed the implementation order to the extent that it required plaintiffs actually to expend money on purchasing equipment, hiring personnel, or making structural modifications to MHS in order to accommodate Christopher, but denied the motion in all other respects. The court also denied North Middlesex's motion to compel compliance with the BSEA implementation order.

The court scheduled a bench trial for December 21, 1992.

The parties reached settlement before trial and so notified the court, which entered final judgment of dismissal.

Under the terms of the settlement (1) the state will develop a community-based group home or subsidized apartment for Christopher (Settlement Agreement ¶ 10); (2) the state will provide Christopher a system of housing, medical services, personal care, and other services necessary to support Christopher in his residential arrangement (Settlement Agreement ¶ 10); and (3) Christopher will continue attending the MHS day school unless and until a more appropriate education program is identified, or until he graduates or reaches the age of 22½ (Settlement Agreement ¶ 1).

## II. Fees and Costs Requested

The student defendant requests attorneys' fees for three lawyers and one paralegal who worked on his case. (Christopher K., in his reply memorandum, has withdrawn his request to be compensated for time spent on the case by a student intern.) The initial request and revised request are as follows:

| NAME | HOURS | × | HOURLY RATE | = | ORIGINAL REQUEST | / | REVISED REQUEST |
|------|-------|---|-------------|---|------------------|---|-----------------|
| R. Howard (attorney) | 402.6 | × | $200 | = | $ 80,520.00 | / | $ 80,520.00 |
| D. Ahern (attorney) | 276.83 | × | $150 | = | $ 41,524.50 | / | $ 41,524.50 |
| P. Gray (attorney) | 135.15 | × | $130 | = | $ 17,569.00 | / | $ 17,569.00 |
| J. Kelsey (student) | 185.0 | × | $ 25 | = | $ 4,625.00 | / | $ –0– |
| B. Glennon (paralegal) | 59.8 | × | $ 50 | = | $ 2,990.00 | / | $ 2,990.00 |
| | | TOTAL = | | | $147,228.50 | / | $142,604.50 |

*See* Motion for Attorneys' Fees at 1; Reply Mem. at 25.

Christopher K. also requests the following costs:

| | ORIGINAL REQUEST | / | REVISED REQUEST |
|---|------------------|---|-----------------|
| Court Reporter | $2,303.00 | / | $2,303.00 |
| Filing Fee | $ 150.00 | / | $ 120.00 |
| Misc. Disbursements | $ 191.36 | / | $ 211.89 |
| TOTAL | $2,644.36 | / | $2,634.89 |

*Id.*

Christopher, in his revised request (Reply Mem. at 10, n. 10), accepts plaintiffs' proposed "billing judgment" reduction of 5%. This brings the total revised request for attorneys' fees to: **$135,474.27,** and the revised request for costs to: **$2503.15.**

## III. Legal Standard

Under the terms of the IDEA, the court has discretion to "award reasonable attorneys' fees as part of the costs to the parents or guardian of a child or youth with a disabil-

ity who is the prevailing party." 20 U.S.C. § 1415(e)(4)(B). Fees "shall be based on rates prevailing in the community ... for the kind and quality of services furnished. No bonus or multiplier may be used in calculating the fees awarded under this subsection." 20 U.S.C. § 1415(e)(4)(C).

The ultimate goal of a statutory fee award "is to award fees adequate to attract competent counsel but which do not produce windfalls." *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 950 (1st Cir.1984) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 430 n. 4, 103 S.Ct. 1933, 1938 n. 4, 76 L.Ed.2d 40 (1983)) (further citation omitted). The district court must carefully review the request for fees. *Pilkington v. Bevilacqua*, 632 F.2d 922, 925 (1st Cir.1980). A request for attorneys' fees, however, "should not result in a second major litigation." *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941.

To compute an appropriate fee award under 20 U.S.C. § 1415, the court should begin by using the "lodestar" method. Under this method " 'the lodestar'—a threshold point of reference that is subject to additions or deductions for specific reasons—is determined by multiplying the total number of hours reasonably spent by a reasonable hourly rate." *Grendel's Den, Inc.*, 749 F.2d at 950 (in context of 42 U.S.C. § 1988) (citations omitted). To calculate the number of hours that were reasonably spent, the court should determine the number of hours actually spent and then "subtract from that number hours that were duplicative, unproductive, excessive or otherwise unnecessary." *Id.* That is, the court should subtract "time expended in excess of an amount consistent with the demands of reasonably diligent or reasonably competent representation." *Furtado v. Bishop*, 635 F.2d 915, 920 n. 9 (1st Cir.1980) (further citation omitted).

Before calculating reasonable fees the court must first determine whether the party requesting fees has crossed the "statutory threshold" to claim "prevailing party" status. *See Hensley*, 461 U.S. at 433 and n. 7, 103 S.Ct. at 1939 and n. 7 (in the context of fees claim under 42 U.S.C. § 1983; the court noted, however, that "[t]he standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party' ").

## IV. Prevailing Party

The statutory standard for determining "prevailing party" status is a practical one. *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989) (citations omitted). Christopher K. may be considered a prevailing party if he succeeded on any significant issue in litigation that achieves some of the benefit that he sought in bringing the action. *Texas State Teachers Ass'n*, 489 U.S. at 789, 109 S.Ct. at 1492 (citing with approval *Nadeau v. Helgemoe*, 581 F.2d 275 at 278–79 (1st Cir.1978) and adopting the standard enunciated therein).

A party need not, therefore, prevail on all significant issues or receive all relief initially sought in order to qualify as a prevailing party under the statute.

> The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties.... Where such a change has occurred, the degree of the plaintiff's overall success goes to the reasonableness of the award ... not the availability of a fee award *vel non*.

*Id.*, 489 U.S. at 792–93, 109 S.Ct. at 1494. The court must look to the overall result of this litigation. *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940.

### A. Overall Result

When proceedings in this case began, Christopher was in an "inadequate day program with lower functioning students and in an unnecessary, inappropriate acute care setting." (Reply Mem. at 1.) As a result of the settlement agreement, Christopher will attend the Hospital School's accredited high school program as a day student and reside in a community residential setting (group home or subsidized apartment) with twenty-four hour medical supports, transportation, a service plan to address his vocational, extracurricular, life skills, financial management, and counseling needs, as well as compensato-

ry education until age 22½. (Mem. in Support of Fee Request at 1–2.)

I find that Christopher, through settlement of the litigation, achieved excellent results and, accordingly, is a prevailing party under the statute. I conclude, therefore, that Christopher is entitled to a fee award. *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940 ("Where a [claimant] has obtained excellent results, his attorney should recover a fully compensable fee.").

### B. Severability of Claims

■ Plaintiffs argue that, although Christopher may have prevailed partially an his claim under section 1415, he did not prevail at all on his claim under section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (section 504 claim). Plaintiffs' argue, furthermore, that these claims are unrelated and severable and, accordingly Christopher should be awarded fees to compensate only for work done on the successful claim.

Christopher disagrees, arguing that he elected to pursue two closely related statutory routes, a special education claim and a section 504 claim, to achieve the same goal: an adequate educational program and appropriate residential setting.

■ In analyzing whether Christopher's claims are unrelated, so as to justify separate treatment for attorneys' fees purposes, the court must determine whether the claims arise from a common core of facts or are based upon related legal theories. *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940; *Nydam v. Lennerton*, 948 F.2d 808, 812 (1st Cir.1991); *Garrity v. Sununu*, 752 F.2d 727, 734 (1st Cir.1984). When the facts give rise to more than one interconnected claim the district court is warranted in its discretion to award fees for time spent on all aspects of the case. *Wagenmann v. Adams*, 829 F.2d 196, 225 (1st Cir.1987); *see also Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940 (holding that when claims for relief involve a common core of facts on related legal theories, the lawsuit cannot be viewed as a series of discrete claims, "[i]nstead the district court should focus on the significance of the overall relief obtained by the [claimant] in relation to the hours reasonably expended on the litigation").

I find that Christopher's needs are the operative core facts that define the type of relief required by law. The issue for litigation was not a dispute over Christopher's needs, but rather a dispute about how to meet those needs. I find that Christopher's claims are not separate and distinct. Christopher's attorneys' time was spent on the litigation as a whole, which, moreover, was brought by plaintiffs to overturn the successful result Christopher had achieved at the administrative level. Counsels' time is not easily divided on a claim-by-claim basis. Christopher's status as a prevailing party is unaffected by plaintiffs' assertions that Christopher's success was only partial.

Having determined that plaintiff's objections are not valid in assessing Christopher's status as prevailing party, I will consider them instead when determining the reasonableness of the amount Christopher requests.

### V. Reasonable Hourly Rates

Christopher K. maintains that the hourly rates he requests reflect fair and reasonable hourly rates for attorneys and professional staff with similar professional experience, providing similar legal services. Plaintiffs disagree.

### A. Attorney Hourly Rates

The student defendant submits testimonial evidence that the hourly rates he requests are in line with the prevailing rates in the Boston legal community. (Affidavits of D. Ahern ¶ 6; J. Ambash ¶ 4; K. Cohen ¶¶ 9–10; K. Boundy ¶ 7; and E. Dailey ¶ 5.) Christopher, furthermore, has proffered substantial evidence that there are few attorneys in the Boston legal community whose expertise in the special education field matches that of his attorneys. (Affidavits of J. Ambash ¶¶ 2–3; K. Cohen ¶ 4; K. Boundy ¶ 4, 6–8; and E. Dailey ¶ 2.)

In making the following findings, I have considered the only evidence submitted in support of plaintiffs' opposition, the state attorneys' fee schedule (hourly rates that would have been requested in 1991 by state attorneys with the same number of years out of law school as Christopher's attorneys).

Plaintiffs' Mem. Opposing Fees, Exh. D. (The court accepts the number of years experience claimed for each attorney in the affidavits submitted by Christopher K., since plaintiffs have proffered no evidence to the contrary.)

| Name | No. of years experience | Hourly Rate: Attorney General | Hourly Rate: Requested |
|------|------|------|------|
| R. Howard | 16 | $180 | $200 |
| D. Ahern | 10 | $130–145 | $150 |
| P. Gray | 7 | $115–125 | $130 |

Mem. Opposing Fees, Exh. D.

### 1. Richard F. Howard, Esq.

Richard Howard ("Howard") began work on Christopher's case in May 1991 while he was an attorney at (and Executive Director of) the Disability Law Center, and continued on the case when he moved, in May 1992, to private practice as a partner at Kotin, Crabtree & Strong. I allow compensation for attorney Howard at the rate of $175/hr. I note that, in private practice, Howard bills at a rate of $150/hr for routine special education administrative matters and $175/hr for litigation in court. (R. Howard Aff. ¶ 10.) In compensating Howard at the higher of the two rates he currently charges in private practice, he will be compensated at a rate well within the range found in the Boston legal market for attorneys of his substantial experience.

### 2. Daniel W. Ahern, Esq. and Pamela Gray, Esq.

I find that the requested hourly rates for Ahern and Gray are reasonable. The requests are supported by evidence. (Affidavits of J. Ambash ¶ 4; K. Cohen ¶ 10.) Plaintiffs, moreover, have proffered no evidence that the rates requested for the two attorneys are not in line with prevailing rates in the community. In fact, the evidence proffered by plaintiffs supports the requested fees for Ahern and Gray. See Plaintiffs' Mem. Opposing Fees, Exh. D.

I find that the rate requested to compensate Gray is consistent with her current rate. Although opposed by plaintiffs', I conclude that, due to the delay in compensating Gray for the BSEA proceeding, it is appropriate to award fees at their current value. Missouri v. Jenkins, 491 U.S. 274, 282, 109 S.Ct. 2463, 2468, 105 L.Ed.2d 229 (1989). See also Grendel's Den, 749 F.2d at 955.

Accordingly, I allow the rates requested by Christopher for Ahern ($150/hr), and for Gray ($130/hr).

### B. Paralegal Hourly Rate

Plaintiffs argue that there is no reasonable basis for compensating the paralegal work performed by Blair Glennon at the rate of $50.00/hr, and conclude, therefore, that the work should be compensated at the rate initially requested for a student intern ($25.00/hr). Plaintiffs, however, proffer no evidence with respect to prevailing community rates for either student clerks or paralegals. Because I have no reason to question Christopher's counsel's declaration as to the prevailing rate for similarly situated paralegals (D. Ahern Aff. ¶ 6), I find that the hourly rate requested is reasonable.

In summary, I allow the following hourly rates: Howard: $175/hr; Ahern: $150/hr; Gray: $130/hr; and Glennon: $50/hr.

### VI. Reasonable Staffing and Amount of Time Spent

Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary. Hensley, 461 U.S. at 434, 103 S.Ct. at 1939.

Christopher K.'s counsel declares that, based on his considerable experience with special education cases, the case was staffed "in a manner that was efficient and appropriate to its degree of complexity and urgency." (R. Howard Aff. ¶ 7.) In compliance with Hensley's good-faith requirement, however, Christopher accepts plaintiffs' request for a 5% reduction on all fees. (Reply Mem. at 10, n. 10.)

■ Decisions about staffing may reasonably be made in law office and case management on the basis of various interests, such as professional training and experience, as well as economy and efficiency. Some staffing decisions, while defensible on these other grounds, nonetheless do not establish that all the services are fully compensable. Given evidence that the specific staffing decisions in this case were made without a focus on economic consideration or judgment about billing, I find that the 5% general reduction in this case is an appropriate way to adjust the allowed fee (except to the extent that additional adjustments are allowed for reasons explained below).

Because plaintiffs contest the reasonableness of the amount of attorney time spent on this case on other grounds as well, and request reductions beyond those encompassed by the 5% reduction the court adopts, I will address each of the objections.

### A. Plaintiffs' Objections

#### 1. Joint Appearances by Howard and Ahern, and Duplicative Staffing, in General.

Plaintiffs argue that it was unnecessary for two attorneys of Howard and Ahern's experience to staff this case. They object, therefore, to an award of attorneys' fees for any of Howard's work in conjunction with Ahern. They contend (1) that the amount of time Howard spent on phone calls and conferences with Ahern was excessive, and (2) that Christopher should not be awarded attorneys' fees for joint appearances by the two attorneys.

■ In general, conferences between an associate and a supervising partner are necessary to effective and diligent representation, and in the end reduce the amount of unnecessary time spent on a case. Howard and Ahern, however, were not in a supervisory relationship. I find that, in spite of Howard's seniority, Howard and Ahern's working relationship in this case was more akin to co-counsel than partner and associate. See D. Ahern Aff. ¶ 4 (detailing extensive litigation experience in special education field); R. Howard Aff. ¶ 7 (detailing complementary legal experience of Howard and Ahern). Since Howard and Ahern functioned as co-

counsel rather than as a partner supervising a relatively inexperienced associate, plaintiffs should not bear the total burden of double expenditures for attorney time. Work divided between two experienced attorneys is not automatically duplicative, however, and deductions will be made only where the billing is not reasonable.

■ I find that holding conferences to discuss this case was consistent with the demands of reasonably diligent and reasonably competent representation. It is not unreasonable for attorneys to consult one another about strategy or law, or meet in person to develop guidelines about work to be performed. The First Circuit was not referring to internal conferences between attorneys on a case when it stated that a prevailing party should not be compensated for fees incurred as a result of two or three lawyers attending a conference when only one lawyer was necessary. See Hart v. Bourque, 798 F.2d 519, 523 (1st Cir.1986); King v. Greenblatt, 560 F.2d 1024, 1027 (1st Cir.1977). I find, in the absence of any evidence to the contrary, that, except for the instances outlined in Part VI.B.7 below, the number of hours the attorneys spent in conference with one another is reasonable given the complementary experience each attorney brought to the case.

■ Christopher argues that his litigation staffing patterns are in line with the plaintiffs' litigation staffing patterns. This observation, however, is not persuasive evidence that Christopher ought to be fully compensated for joint appearances by Howard and Ahern at court and at depositions. Accordingly, I will allow the following reduction for the double billing of joint court and deposition appearances. Howard will be compensated in full, because it was he who addressed the court. Ahern's fees will be reduced by 50% for joint appearances with Howard.

■ Plaintiffs take issue also with the time that either Howard or Ahern spent in conference with Gray. As explained above, partner supervision is essential to ensuring that less experienced associates represent their clients competently, effectively, and ef-

ficiently. In one case for example, the appellate court affirmed the district court's decision to reduce ·the amount of the lodestar calculation on the ground that inadequate partner time had been spent on the case resulting in unnecessary time by relatively inexperienced lawyers. *See Copeland v. Marshall,* 641 F.2d 880, 903 and n. 50 (D.C.Cir.1980) (citations omitted). The time the two attorneys spent in conferences with Gray reduced—rather than increased—the total amount of attorneys' fees. Thus, I find that Howard's and Ahern's time in conferences with Gray was "consistent with the demands of reasonably diligent or reasonably competent representation[,]" *Furtado,* 635 F.2d at 920 n. 9, and therefore make no reduction in this instance.

### 2. Core/Non–Core Rates

Christopher has filed multiple affidavits from experienced attorneys in private practice, attesting that, based on their review of the case, the rates requested and staffing levels were appropriate. (Affidavits of J. Ambash ¶ 5; K. Cohen ¶ 7; E. Dailey ¶ 5.) Plaintiffs, meanwhile, have proffered no evidentiary support for their general allegation that the case was overstaffed, not even evidence of their own staffing patterns for this case.

More specifically, however, plaintiffs object to compensating Howard, Ahern, and Gray at their litigation rates for clerical or secretarial tasks. *See Lipsett v. Blanco,* 975 F.2d 934 (1st Cir.1992) (citations omitted). Plaintiff specifies Howard's billing entries for faxing and delivering documents to court, and Ahern's entries reorganizing files and compiling exhibits. (Mem. Opposing Fees at 20, nn. 14–17.)

■ It is appropriate for the court to reduce the fee award to reflect failure to properly apportion work in accordance with responsible hierarchical staffing of a case. *Furtado,* 635 F.2d at 920 (citations omitted). Time spent on clerical or secretarial tasks by attorneys should be compensated at a rate commensurate with the nature of the tasks. *Lipsett,* 975 F.2d at 940. Likewise, travel time should not be billed at an attorney's

hourly rate for professional services. *See Furtado,* 635 F.2d at 922.

■ The court does not adopt the core/non-core hourly rate plaintiffs' propose, however. Instead the attorneys will be compensated at their regular rates for law-related tasks and at $50/hr for clerical/paralegal tasks and travel time.

### B. Other Reductions

### 1. "Lobbying Activity" by Howard

■ Plaintiffs argue that Howard spent 13.3 hours on "lobbying" activities and that "lobbying" time is not compensable. Christopher counters that the time his attorney spent inquiring about the state's "efforts to win approval of an appropriation and to seek such an appropriation himself," were "essential" "to effectuate the BSEA Order and to accommodate the Legislature's budgetary schedule." (Reply Mem. at 19.) Howard states, furthermore, that this legislative work was "an integral part of [Christopher's] effort to obtain an appropriate residential education program as soon as possible and a genuine effort to find a means to settle the case without trial." (*Id.*)

I do not accept plaintiffs' characterization of Howard's activities as uncompensable "lobbying." Howard's activities, as described by him, are akin to investigating to determine the collectability of a judgment. Plaintiffs have proffered no support for their contention that Howard's activities were of a type not compensable by law. I allow full compensation for the 13.3 hours identified as legislative action.

### 2. Attending Christopher's IEP Meeting

■ I do not accept plaintiffs' objection to compensation for Howard's time attending Christopher's IEP meeting. Plaintiffs provide no legal basis for excluding this time. In accordance with previous rulings, Ahern will be compensated at one-half his hourly rate for joint attendance with Howard.

### 3. Time Spent Supervising Student Interns

■ Ahern will not be compensated for time spent supervising a student intern

whose request for compensation was withdrawn. Any time that can be attributed solely to this supervision should be withdrawn. There will, however, be no reduction in Ahern's time for meetings at which a student intern was merely present.

### 4. BSEA Administrative Proceedings and Other Hours Billed by Gray

 Fees may be awarded under the IDEA for time spent on the administrative proceedings before the BSEA. *E.g.,* *Williams v. Boston School Committee,* 709 F.Supp. 27 (D.Mass.1989). Plaintiffs concede that the request for Gray's hours spent on this phase of the case (126 hours) are mostly reasonable. (Mem. Opposing Fees at 23.) Although I accept plaintiffs' point that it would have been preferable for Gray to keep records with first initials and last names, the time records submitted for Gray are sufficiently detailed to allow the court to make a reasoned evaluation. I find the request for compensation of Gray's time to be entirely reasonable and subject to reduction only to the extent that clerical and travel time will be compensated at $50/hr.

 Gray, furthermore, will be compensated for the nine hours she billed during the litigation phase of the case. Gray, through her experience in the administrative phase of the case, provided valuable information and advice to the litigation team. Her time attending the BSEA hearing with Ahern (8/2/92), however, will be subject to a 50% reduction (for joint appearance).

In summary, 133.15 hours billed by Gray are reasonable; two of the hours are subject to a 50% reduction and any travel time built into the time billed for hearings and conferences or clerical time will be compensated at $50 an hour.

### 5. Paralegal Time

Christopher requests compensation for 59.8 hours billed by paralegal Blair Glennon. Plaintiffs object. In addition to objecting to her hourly rate, plaintiffs contend that Glennon should not be compensated for any of the 14 hours spent reviewing documents, the six hours billed for "duplicative attendance at BSEA conferences and strategy meetings," or the ten hours spent working on the "unsuccessful attempt to modify the court's Order of May 20, 1992." (Mem. Opposing Fees at 30.) In addition plaintiffs urge that the 30 hours Glennon spent drafting interrogatories were excessive. *Id.* Plaintiffs suggests that it would be equitable to award fees for 20 hours of Glennon's time. *Id.*

Christopher replies that the time spent by Glennon, a member of the bar for several years who was functioning in a paralegal role on this case, was appropriate to the tasks assigned.

Having previously ruled that Glennon's time is to be compensated at the rate of $50/hr, I conclude that the record does not contain sufficient information with which I may make a reasoned evaluation of Glennon's billing. Spending 30 hours drafting interrogatories may be excessive. Unless Christopher proffers evidence that this expenditure of time was reasonable, I am expected to order a substantial reduction in the amount of time compensable for drafting interrogatories. Absent any evidence to the contrary, however, I find that the remainder of the litigation support time billed by Glennon was reasonable.

### 6. Billing Inconsistencies

Plaintiffs contend that Christopher's request should be trimmed for inconsistencies in billing. Plaintiffs claim, for example, that Howard and Ahern billed differing amounts of time for meetings they both attended. (Mem. Opposing Fees at 28.) Christopher replies that "each entry fairly reports the time that the recording attorney spent on an activity," and that any inconsistencies "reflect different amounts of time spent by that attorney on an activity." (Reply Mem. at 20.) Christopher suggests that the variations are due to one of the attorneys attending only a portion of a meeting, or less preparation time billed by one of the two attorneys.

I find these explanations reasonable, and the inconsistencies minor. I find, furthermore, that any true inconsistencies are subsumed under the 5% billing judgment reduc-

tion and the reduction in Ahern's time for joint appearances.

### 7. The Settlement Phase

Plaintiffs argue that Christopher's attorneys billed excessive time for work on the settlement phase of the case and point out that most of the 123 hours billed for settlement activities are described as "conversation" and "phone calls" among counsel. Plaintiffs suggest a draconian 50% reduction in the hours requested. Christopher replies that preparation for litigation was ongoing during this phase, and that his counsel had to produce numerous counterproposals to arrive an acceptable final settlement document.

Although, as explained above, conversations between co-counsel are necessary to competent and efficient representation, the amount of time Howard and Ahern billed for their consultations regarding settlement may be excessive. I find that the time charged in internal consultations about settlement is not explained on a basis that would allow a reasoned finding, and I expect to order a substantial reduction absent supporting evidence.

### 8. Attorneys' Fees Petition Time

Plaintiffs contend that Christopher's attorneys billed an excessive amount of time for work on the fees petition. They contend, moreover, that the attorneys' hourly rates should be reduced for their work on the petition. (Mem. Opposing Fees at 31–33.) Christopher replies that the time spent on the petition was not excessive and that is there is no reasoned basis for a reduction. (Reply Mem. at 22–23.)

First, there is no legal support for the general proposition that hourly rates must be reduced for work on a fees petition. Plaintiffs challenged Christopher's petition on legal as well as factual grounds. In this case, anticipating and replying to plaintiffs' opposition called for much more than "documenting what a lawyer did and why he or she did it." *Gabriele v. Southworth,* 712 F.2d 1505, 1507 (1st Cir.1983) (allowing every hour of a 234–hour request on the fee phase alone, but making a per hour rate reduction to compensate for the level of legal analysis required in drafting the petition).

Second, the comparison between attorney time spent on various phases of the case is not an appropriate basis for determining whether the amount of time spent on the petition is reasonable. A better comparison would be with the amount of time plaintiffs spent preparing their memorandum in opposition. This comparison is not a matter of record, however.

I find that Christopher's petition is thorough and, with exceptions noted in this memorandum, is well-supported, as required by legal precedent. Accordingly, I make no reduction in the hourly rate, or the number of hours to be compensated for work on the fees petition.

### 9. Costs

Plaintiffs contest the costs for which Christopher requests compensation, arguing that they should be disallowed entirely. (Mem. Opposing Fees at 33–34.) The only ground on which plaintiffs base their contention is that most of the costs are attributable to reporter fees for depositions, "many of which duplicated in part the administrative hearings before the BSEA." *Id.* at 33. This argument is without merit. As Christopher points out, these depositions were taken a year and a half after the administrative hearing. Among the circumstances that changed during that year and a half, the BSEA Order was entered. In view of the litigation as whole, I find that these depositions were a reasonable expense.

I also allow reimbursement of copying, fax, and messenger costs incurred by Christopher in the amount he requests (the full amount, subject to the 5% across the board reduction accepted by Christopher and adopted by the court in the Memorandum and Order).

### VII.

In summary, I find that the work billed by Christopher's attorneys for which Christopher requests fees pursuant to 20 U.S.C. § 1415 (except for those hours deducted by the court in this Memorandum and Order, or determined to be subject to reduction absent support) was consistent with the demands of

reasonably diligent and reasonably competent representation. I also find that the hourly rates requested in Christopher's motion (except for those rates revised by the court in this Memorandum and Order) are those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation as Christopher's counsel.

With the aim of avoiding needless expenditure of attorney and court time, I have reviewed the submissions of the parties and made both general and specific findings. There are, however, objections to the fee request that I cannot resolve on the present record. Accordingly, I will schedule a hearing at which, in accordance with the rulings I have made in this Memorandum and Order, I will invite brief additional oral submissions and will then make a presumptive finding of an amount that would constitute a reasonable fee award in this case. I expect at that time to enter an order that this presumptive finding will become the fee award in the case unless contested by a written submission by one of the parties, within a reasonable time allowed by the court, showing good cause for a lower or higher figure.

The parties, however, are encouraged to confer to attempt to agree on the total amount of attorneys' fees to be awarded that is consistent with the rulings in this Memorandum and Order. If the parties can agree, they may file, at or before the conference, a joint submission stating their agreement. If the parties cannot reach an agreement, the court will hear the parties and make a presumptive finding as explained above.

**ORDER**

For the foregoing reasons, it is ORDERED:

(1) The court ALLOWS Christopher's motion for attorneys' fees (Docket No. 62), with modifications as stated in this Memorandum and Order.

(2) The court orders the parties to file, on or before the date of the hearing scheduled below, a joint submission, if they are able to agree, and separate submissions otherwise, on the total amount of attorneys' fees owed in accordance with this Memorandum and Order.

(3) A hearing is scheduled for June 29, 1993, at 11 a.m., in Courtroom 11, United States Courthouse and Post Office Building, Post Office Square, Boston, MA 02109, to consider oral argument, and if necessary to make a presumptive finding of attorneys' fees owed.

JOINT SUBMISSION ON THE ATTORNEY'S FEES TO BE AWARDED CONSISTENT WITH THE COURT'S DECISION

Consistent with this Court's memorandum of Decision of June 25, 1993, counsel met a reviewed the fee submissions, including supplemental submissions to be filed with the Court. Counsel for Christopher and the Commonwealth agreed to that the following figures comply with the Court's Memorandum and Order:

To the Disability Law Center... $85,052
To Kotin, Crabtree & Strong... $46,468

This submission does not constitute a waiver of either party's right to appeal the Court's Decision of June 25, 1993.

*ORDER*

Consistent with this Court's memorandum of Decision of June 25, 1993, the Departments of Public Health and Education are ORDERED to forthwith pay attorney's fees and costs to Christopher's K.'s attorneys as follows:

To the Disability Law Center... $85,052
To Kotin, Crabtree & Strong... $46,468