**ARUNIM D., By and Through, his father, ASHIM D., Plaintiffs,**

v.

**FOXBOROUGH PUBLIC SCHOOLS, Defendant.**

**Civil Action No. 96–11035–GAO.**

United States District Court, D. Massachusetts.

June 27, 1997.

---

Richard Howard, Kotin, Crabtree & Strong, Boston, MA, for plaintiff.

John P. Lee, Law Offices of John P. Lee, Attleboro, MA, for defendant.

## MEMORANDUM AND ORDER

O'TOOLE, District Judge.

The plaintiffs brought this action to recover attorney's fees and costs pursuant to 20 U.S.C. § 1415(e)(4)(B) of the Individuals with Disabilities Education Act. The plaintiffs have now moved for summary judgment.

### I. Background

The following facts are not subject to genuine dispute: Arunim D. is a fourteen year-old student who has autism and has received special education services since the age of three. From approximately 1991–95, Arunim was in an intensive residential program for autistic children at the Higashi School ("Higashi") in Randolph, Massachusetts. He resided at Higashi pursuant to an Individual Educational Plan ("IEP")[1] developed by and paid for by the Teaneck, New Jersey public schools where his family lived.

In August 1995, Arunim's parents moved to Foxborough, Massachusetts, and enrolled him in the Foxborough Public Schools ("Foxborough"). On August 29, a Special Education Team[2] ("TEAM") meeting was held by Foxborough to develop an IEP for Arunim. The TEAM was unable to develop an IEP for Arunim at the time because it needed to wait for evaluations and teacher assessments yet to be completed by Higashi.

On September 15, 1995, Foxborough developed an IEP for Arunim that placed him in the fifth grade in the Ahern Middle School in a classroom for children with special needs. See Mass. Regs. Code tit. 603, § 28.502.2 ("Regular education program with no more than 25% time out"). On October 15, Arunim's parents rejected portions of the IEP for the reasons that evaluations were still pending, the autism consultant was not qualified, and the after-school and home components of the IEP were not in place. Over the next month, Arunim's behavior deteriorated both at school and at home.

In early November, Arunim had several violent outbursts which necessitated his admission to Bradley Hospital in East Providence, Rhode Island. At Bradley, Arunim received supervised care, a highly structured behavioral program, and academic instruction in a special education program.

Arunim's parents asked Foxborough to authorize and pay for short-term placement for Arunim in the residential school at the Bradley Development Disabilities Program. Foxborough responded that it was not permitted to authorize such a payment. Arunim's parents then filed a request for an emergency hearing with the Bureau of Special Education Appeals ("BSEA") to require Foxborough to place Arunim in Bradley's Developmental Disabilities Program until his transition back to a public school program. In addition, the parents requested that a qualified team of professionals at Bradley evaluate Arunim and recommend an appropriate educational plan.

On December 11, a hearing was held before a BSEA hearing officer. At the hearing, Foxborough agreed to place Arunim in Bradley's residential school program for a period not to exceed eight weeks. The parties further agreed that while Arunim was at

---

1. An IEP is a written plan developed for a child with a disability to meet the child's unique educational and service needs. It prescribes the manner in which these needs will be me 20 U.S.C. § 1401(a)(20); Mass. Regs. Code tit. 603, § 28.322.

2. A Special Education Team is the group responsible for developing an IEP if it is found that a child requires special education. See Mass. Regs. Code tit. 603, § 28.314.00.

Bradley, the Bradley staff would conduct an independent evaluation of Arunim in all areas of special education, and that Foxborough would employ Dr. Barbara Cutler as its consultant to work with Bradley to develop a transition program back to the Foxborough schools. The next day, Foxborough proposed an IEP, which incorporated most of the previous day's agreements and Arunim's parents accepted the IEP.

After a series of disagreements about the breadth of the December agreement, another hearing was held with the BSEA hearing officer. On January 12, 1996, the parties entered into another agreement that provided, at Foxborough's expense, for further care of Arunim at Bradley and the hiring of Dr. Cutler as his autism counselor. In late January, Foxborough agreed to an extension of Arunim's stay at Bradley.

The two sides were unable to agree on further educational plans for Arunim, and a series of BSEA hearings were held in early March. On April 4, 1996, the parties entered into a Settlement Agreement which provided that Foxborough develop a detailed educational plan for Arunim that included a school-based component, a home-based program provided by Bradley, a summer day program at Bradley, and all necessary transportation. Further, Foxborough agreed to pay for Arunim's placement at Bradley from November 15, 1995 through the spring of 1996.

The parties agree that the program worked well until November 1996, when Arunim's behavior again began to deteriorate. In December 1996, Arunim was again placed at Bradley at Foxborough's expense.

## II. *Discussion*

The Individuals with Disabilities Education Act provides that a court may award reasonable attorney's fees to the parents of a child with a disability who is the prevailing party. 20 U.S.C. § 1415(e)(4)(B).[3] The fees awarded must be based on the rates prevailing in

the community in which the services were furnished. 20 U.S.C. § 1415(e)(4)(C).

Arunim's parents have filed this action to recover the attorney's fees and costs they incurred in settling disputes with the Foxborough Public Schools about Arunim's educational plans and his accommodations at Bradley. They claim that they are "prevailing parties" within the relevant statute and are entitled to summary judgment as a matter of law. *See* 20 U.S.C. § 1415(e)(4)(B). Foxborough contends that it would be inappropriate to grant summary judgment because genuine issues of material fact exist. Further, Foxborough maintains that the parents are not entitled to their attorney's fees because the fees are unwarranted under the statute and unreasonable in amount.

Summary judgment is appropriate wherever "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Barbour v. Dynamics Research Corp.,* 63 F.3d 32, 36–37 (1st Cir.1995). The non-moving party, here Foxborough Public Schools, is entitled to all reasonable inferences that may be derived from the evidence submitted, and the evidence must be viewed in the light most favorable to it. *Barbour,* 63 F.3d at 36–37.

### A. *Prevailing Party Status*

■ "After a case is resolved, by whatever method, and a party requests attorney's fees, we look for a 'prevailing party' within the meaning of [the] term as spelled out in the case law." *Paris v. U.S. Dep't of Hous. and Urban Dev.,* 988 F.2d 236, 241 (1st Cir.1993) (citations omitted). A party may be considered the "prevailing party" even when he vindicates his rights without formally obtaining relief. *See Nadeau v. Helgemoe,* 581 F.2d 275, 279 (1st Cir.1978). "It is often explained that when plaintiff's lawsuit acts as a 'catalyst' in prompting defendants to take

---

**3.** The provisions reads:

In any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a child or youth with a disability who is the prevailing party.

20 U.S.C. § 1415(e)(4)(B).

action to meet plaintiff's claims, attorney's fees are justified despite the lack of judicial involvement in the result." *Id.* "To be a catalyst the party must demonstrate (1) a causal connection between the litigation and the relief sought and (2) that the success was not obtained by a gratuitous gesture of the fee target." *Paris,* 988 F.2d at 241 (citations omitted).

 order to determine whether the plaintiffs here were "prevailing parties," the Court must look to the overall result of the litigation. *See Massachusetts Dep't of Pub. Health v. School Comm. of Tewksbury,* 841 F.Supp. 449, 456 (D.Mass.1993). It is often helpful to review the chronology of events to determine whether the plaintiffs' actions were the cause of the relief the plaintiffs sought. *See Nadeau,* 581 F.2d at 281 ("We should also note that we consider the chronological sequence of events to be an important, although clearly not definitive factor, in determining whether or not defendant can be reasonably inferred to have guided his actions in response to plaintiff's lawsuit."). As detailed above, the plaintiffs originally sought educational accommodations from Foxborough for their son, Arunim. It is clear that the plaintiffs' filings with the BSEA brought about the relief they sought. In the end, Foxborough agreed to provide Arunim with, among other things, a school-based program that incorporated a home-based component and an autism counselor. The plaintiffs' pursuit of the legal remedies through the administrative process caused Foxborough to provide, sooner than it would have without the plaintiffs' actions, all the relief desired. Further, the relief the plaintiffs did obtain was substantial.

The defendant argues that it acted in good faith and that any delay in approving Arunim's care at Bradley was only because it had to follow Massachusetts' administrative regulations. Although Foxborough may have acted with the best of intentions, "the good faith of defendants is not a controlling factor in

determining whether or not plaintiffs merit an award." *Nadeau,* 581 F.2d at 280. Instead, the "key issue is the provocative role of the plaintiff's lawsuit, not the motivations of the defendant." *Id.*

The plaintiffs, here, are "prevailing parties" under the statute, yet it must still be determined whether the plaintiffs' attorney's fees and costs are "reasonable." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).

### B. *Remedy*

 "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939; *see Massachusetts Dep't of Pub. Health,* 841 F.Supp. at 456. Counsel submitting such a request should exclude any hours that are excessive, redundant, or unnecessary. *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939–40; *Massachusetts Dep't of Pub. Health,* 841 F.Supp. at 456.

The plaintiffs' counsel has submitted a detailed account of the hours he expended and the costs incurred in this case. It is undisputed that plaintiffs' counsel is well versed and able in education law. *See Massachusetts Dep't of Pub. Health,* 841 F.Supp. at 458. Further, he has discounted his support staff hours by 15% to avoid any duplicative charges.

 The defendant disputes the plaintiffs' fees as unreasonable. Though it asserts that factual issues exist which would make summary judgment inappropriate, the defendant only offers its own counsel's affidavit averring that the fees are unreasonable.[4] Once the moving party has properly supported its motion for summary judgment, the non-moving party "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine is-

---

4. Defendant's counsel also states in his affidavit that while "Barbara C. Cutler was employed by Foxborough as a consultant. she was also working for [Arunim's] parents.... Dr. Cutler clearly had a conflict of interest in working for both sides." It is unclear what the relevant implica-

tion of this allegation is. Further, "[m]ere allegations, or conjecture unsupported in the record, are insufficient to raise a genuine issue of material fact." *Horta v. Sullivan,* 4 F.3d 2, 8 (1st Cir.1993).

sue for trial." *Barbour,* 63 F.3d at 37. The defendant's conclusory remarks about the plaintiffs' fees and costs are not enough to forestall summary judgment. *Compare with Shelly C. v. Venus Independent Sch. Dist.,* 878 F.2d 862 (5th Cir.1989), *cert. denied,* 493 U.S. 1024, 110 S.Ct. 729, 107 L.Ed.2d 748 (1990).[5]

The fees requested are fair and reasonable in the circumstances. The plaintiffs' motion for summary judgment is granted and judgment is to be entered awarding the plaintiffs their attorney's fees and costs in the amount of $60,550.91.

IT IS SO ORDERED.

---

**5.** In *Shelly C.,* the court held that summary judgment was inappropriately granted in an IDEA attorney's fees case because the non-moving party presented affidavits supporting the unreasonableness of the fees and raised the issue that the defendant had offered to settle the case at an earlier point which may have barred the awarding of attorney's fees pursuant to 20 U.S.C. § 1415(e)(4)(D). *Shelly C.,* 878 F.2d at 863. Unlike *Shelly C.,* Foxborough has not brought forth any specific facts that create a genuine issue of material fact.