John FLANAGAN; Joseph Missett, individually and on behalf of all others similarly situated, Plaintiffs–Appellants,

v.

INLAND EMPIRE ELECTRICAL WORKERS PENSION PLAN & TRUST; Paul L. Briggs; Ralph R. Ecker; Don H. Swartz; Glen L. Evans; George R. Elgin; Clayton M. Smith; John Doe, its named fiduciaries, Defendants–Appellees.

No. 91–36188.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 15, 1993.

Decided Aug. 30, 1993.

Stephen M. Rummage, Richard J. Birmingham, Bruce Lamka, Clifford Cantor, Davis Wright Tremaine; Seattle, WA, for plaintiffs-appellants.

Allen Bruce McKenzie, Donaldson, Kiel & McKenzie, Seattle, WA, for defendants-appellees.

Before: CANBY, WIGGINS, and T.G. NELSON, Circuit Judges.

CANBY, Circuit Judge:

Former participants in a multiemployer, collectively-bargained pension plan brought this action under the Employee Retirement Income Security Act (ERISA), 29 U.S.C.A. §§ 1001–1461 (West 1985 & Supp.1993), seeking injunctive and monetary relief against the plan and its trustees. The plaintiffs contend that the plan denied them vested benefits and that the plan's trustees breached fiduciary duties. The district court granted the defendants summary judgment. We reverse and remand.

# I

John Flanagan and Joseph Missett were employed in the construction of nuclear power facilities at Hanford, Washington. When work on those facilities slowed dramatically, the two men lost their jobs in 1983. Flanagan and Missett, each four-year veterans of the project, had been accruing benefits as participants under the Inland Empire Electrical Workers Pension Plan and Trust (the Plan). However, each fell short of the Plan's five-to-ten year service term required in order for accrued benefits to become nonforfeitable; that is, for those benefits to vest.

The Plan, in compliance with federal law, allowed the men four years, their length of service prior to layoff, in which to resume covered employment without forfeiting the prior service credit towards vesting. That allowance is known as the "rule of parity." *See* 26 U.S.C. § 411(a)(6)(D) (1988) (Internal Revenue Code (IRC) provision); 29 U.S.C. § 1053(b)(3)(D) (1988) (parallel ERISA provision). Neither had returned to covered employment when the Plan terminated in 1985.

Upon the Plan's termination, its trustees distributed the Plan's assets among those it deemed to be its participants. The Plan made no distribution to persons subject to the rule of parity, nor did it notify those persons of the termination. Flanagan and Missett eventually filed claims for benefits, but the Plan rejected those claims. The two then brought this action, in November 1990, on behalf of themselves and similarly situated former employees.[1]

The Plan had enjoyed "qualified" status under federal law. Qualified status afforded tax benefits to the employers and to the labor organizations that contributed to the Plan, but required that the Plan meet minimum standards contained in ERISA and the IRC. One of those standards provided that, upon a partial or complete termination of the Plan, accrued benefits of "affected employees" become nonforfeitable. 26 U.S.C. § 411(d)(3) (1988). The Plan document implemented that standard, providing that in the event of a partial or a complete termination the "rights of each affected Participant ... shall be nonforfeitable." Flanagan and Missett argue that they are entitled to pension benefits because they were affected participants when the Plan terminated.

The district court disagreed. It reasoned that the plaintiffs were no longer participants in the plan after their layoff in 1983. It rejected the argument that the rule of parity preserved their accrued benefits until the Plan terminated in 1985.

The plaintiffs argued in the alternative that their rights in the Plan had vested upon a partial termination of the Plan that allegedly had occurred in 1982–83, prior to their discharge. During that year, participation in the Plan had declined significantly due to layoffs. That decline, they argued, had amounted to a partial termination under the Code. *See* Treas.Reg. § 1.401–6(b)(2) (1988).

Without deciding whether a partial termination had occurred, the district court found that the partial termination claims were time-barred. The court applied the six-year Washington statute of limitation applicable to contract actions, Wash.Rev.Code Ann. § 4.16.040 (West 1988 & Supp.1993), and found that the statute had begun to run on the date of the alleged partial termination. The court refused to toll the statute.

---

1. The district court made no determination whether to certify a class action prior to granting summary judgment for the defendants.

The district court had jurisdiction over the matter under 29 U.S.C. § 1132(e), and we have jurisdiction over the appeal under 28 U.S.C. § 1291. The standard of review is de novo. *Wang Lab. v. Kagan*, 990 F.2d 1126, 1128 (9th Cir.1993). The parties raise no disputed issues of material fact. Therefore, we ask only whether the district court correctly applied the relevant substantive law when it granted the defendants summary judgment. *See id.*

## II

We consider initially the claims against the Plan, and focus upon the benefit claims that arose from the complete termination of the Plan in 1985. We conclude that former employees who were subject to the rule of parity when the Plan terminated are "affected participants" within the meaning of the Plan. Summary judgment for the Plan was improper because those persons retained accrued benefits which became nonforfeitable when the Plan terminated. We further conclude that the plaintiffs' action to obtain those benefits was filed in a timely manner.

## A

■ Notwithstanding the district court's ruling to the contrary, we conclude that Flanagan, Missett, and former employees similarly situated were participants in the Plan when the Plan fully terminated. Participant status is relevant here for two reasons. First, by its terms ERISA § 502(a)(1)(B) permits only participants or beneficiaries of a plan to sue for benefits. *See* 29 U.S.C. § 1132(a)(1)(B) (1988). Second, under section 11.02 of the Plan document, only the accrued benefits of "affected participants" became nonforfeitable as a result of the plan's termination. The parties appear to assume that participant means the same thing in each of those contexts, and we see no reason to doubt that assumption. We believe that the term as defined in the plan controls our inquiry, insofar as that meaning does not conflict with that contained in the relevant provisions of ERISA and the IRC.

*See Tilley v. Mead Corp.*, 927 F.2d 756, 760 (4th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 3013, 120 L.Ed.2d 886 (1992).

Section 2.21 of the Plan document defines a participant in the Plan as

> an Employee or former Employee who has become a Participant in the Plan in accordance with section 4.01 and who is participating in the Plan in one of the categories of participation specified in section 4.02.

Flanagan and Missett became participants under section 4.01, prior to their layoff, because their employer had begun making contributions on their behalf. Section 4.02 provides in relevant part:

> Each participant shall be considered to be an Active Participant, Inactive Participant, Terminated Vested Participant, Terminated Non–Vested Participant, or Retired Participant, as follows:

> .    .    .    .    .

> (d) "Terminated Non–Vested Participant" means a former Employee who has terminated his participation in accordance with Section 8.01 [and] who does not have a Vested Interest in accordance with Section 8.03. . . .

Flanagan and Missett were terminated non-vested participants in 1985. Each man had "terminated his participation" in the Plan after his 1983 layoff because neither returned to work for the number of hours required for renewed participation under section 8.01. In addition, neither man had a vested interest in the Plan under the usual five-to-ten year service requirement contained in section 8.03.

The plaintiffs maintain that under section 4.02 of the Plan, terminated non-vested participants remain participants for purposes of the Plan. The plain language of sections 2.21 and 4.02 compels us to agree. Terminated non-vested participants are but one subset of the overall group of participants.[2]

The district court believed that a plain language reading of section 4.02 was untenable, on the ground that such a reading neces-

---

2. Plaintiffs are not removed from participant status by reason of being "terminated" participants. Section 4.02(c) sets forth the category of "Termi-

nated Vested Participant." No one suggests that that group is denied participant status.

sarily made the concept of participant subgroups meaningless. We disagree. There may have been other provisions of the Plan, not at issue here, which were implemented differently among individual participants.[3] If so, implementation of those provisions either might have required, or might have benefitted from, subdividing the set of Plan participants. *Cf. Connecticut Nat'l Bank v. Germain,* ── U.S. ──, ──, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) (courts should reject an interpretation that renders a statutory provision *wholly* superfluous, not merely redundant or meaningless in some respects).

We reject the defendants' similar reasoning that to recognize a terminated non-vested employee as a participant requires that every former employee be given benefits. In the first place, benefits do not flow simply because one is labeled a participant. In the present case, for example, plaintiffs are protected against forfeiture of benefits on termination of the Plan only if they qualify as "affected" participants. In addition, all employment is not necessarily participation. ERISA permits a qualified plan, like this one, to require each employee to tally up to 1,000 hours of service in a single year before the employee may participate in that plan. *See* 29 U.S.C. § 1052(a)(1)(A)(ii), (3)(A) (1988).[4]

Our reading of participant is consistent with the scope of IRC § 411(d)(3). To a degree, that section has a broader reach than the Plan itself: the statute speaks of employees rather than participants. *See* 26 U.S.C. § 411(d)(3) (1988) ("the rights of all affected employees" vest upon a plan's termination). Although the provision does not specify whether a former employee can benefit from its vesting rule, we conclude that a former employee is fairly included within its scope.

**B**

■ We now turn to the question whether the plaintiffs were "affected" by the Plan's termination in 1985. Unless they were, their status as participants entitles them to nothing. Indeed, they arguably lack standing under ERISA to seek benefits unless they were affected. *See Firestone Tire & Rubber v. Bruch,* 489 U.S. 101, 117–18, 109 S.Ct. 948, 958, 103 L.Ed.2d 80 (1989) (a former employee is a participant entitled to sue under ERISA if he or she has "a reasonable expectation of returning to covered employment" or has a "colorable claim to vested benefits") (quotations and citations omitted).

The Plan document fails to define "affected." Accordingly, we inquire whether Congress intended that the accrued benefits of former employees who remain subject to the parity rule should vest as a result of a plan's termination. The relevant provision, IRC § 411(d)(3), offers no guidance. Legislative history is nonexistent, perhaps because some version of the vesting-upon-termination rule existed before ERISA became law. *See* Joint Explanatory Statement of the ERISA Conference Comm., *reprinted in* Bureau of National Affairs, *ERISA: Selected Legislative History* 18 (1992). No reported case squarely addresses the issue, although the Third Circuit recently came close. *See Shawley v. Bethlehem Steel Co.,* 989 F.2d 652, 657 (3d Cir.1993) (assuming without deciding that former employees were "affected employees" within meaning of IRC § 411(d)(3), but finding no colorable claim for benefits under *Firestone* because the plan had not terminated). We are able to consider the structure of ERISA and relevant IRC provisions as a whole, *see King v. St. Vincent's Hosp.,* ── U.S. ──, ──, 112 S.Ct. 570, 574, 116 L.Ed.2d 578 (1991), and the policies that Congress intended to promote with those laws. *See Firestone,* 489 U.S. at 113–14, 109 S.Ct. at 955–56.

The defendants maintain that the Plan's termination had no effect upon Flanagan and Missett because the two forfeited their accrued benefits when they lost their jobs.

---

**3.** For example, only active participants were entitled to retire for disability.

**4.** Neither the Plan document or the summary specify a minimum participation standard. In accordance with an accepted method of calculation, the Plan deems a participant to have a break in service if covered employment falls below 435 hours in a given year. However, the Plan credits a year of past service, prior to participation, only if the participant tallied 1,000 hours of covered employment in that year.

The plaintiffs counter that their accrued benefits were viable during the rule of parity period, because they neither consented to the forfeiture of those benefits, nor received payment for them via an involuntary cash-out. *See, e.g., Herrmann v. E.W. Wylie Corp.*, 766 F.Supp. 800, 802–03 (D.N.D.1991) (describing IRS General Counsel's view of 26 U.S.C. § 411(a)(3), (6), (7) (1988)). In our view, however, the issue whether the plaintiffs' prior service credits disappeared, or merely lay dormant, after the layoffs is largely irrelevant. The plaintiffs clearly were affected by the Plan's termination because it extinguished their opportunity, which the rule of parity created and preserved, to return to covered employment and to revive their prior service credits. Accordingly, they had a colorable claim to benefits under *Firestone.*

Our determination advances one of ERISA's primary goals that "employees and their beneficiaries ... not be deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds have been accumulated in them." *Concrete Pipe & Products of Cal., Inc. v. Construction Laborers Pension Trust for So. Cal.,* —— U.S. ——, ——, 113 S.Ct. 2264, 2271, 124 L.Ed.2d 539 (1993) (quotation and citation omitted); *see also Chait v. Bernstein,* 835 F.2d 1017, 1021 (3d Cir.1987) (§ 411(d)(3) protects "workers who would otherwise be left out in the cold after a drastic and sudden change in the plan"). At the same time, our conclusion poses no threat to a second ERISA goal: ensuring the long-term stability of pension plans. *See Pension Benefits Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 651, 110 S.Ct. 2668, 2678, 110 L.Ed.2d 579 (1990).[5] We emphasize that not all former employees became entitled to benefits as a result of the Plan's termination. Only those, like Flanagan and Missett, who had accrued benefits prior to a layoff *and* who were within a parity period are included. *Cf. Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. 211, 214, 106 S.Ct. 1018, 1020, 89 L.Ed.2d 166 (1986) ("Congress wanted to guarantee that if a worker has been prom-

ised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit—he will actually receive it") (quotation and citation omitted).

The district court erroneously relied upon the concept of a break-in-service rule when it rejected the plaintiffs' arguments. The IRC permitted the Plan to impose upon a returning employee an additional one-year service requirement before the employee again could become a Plan participant. *See* 26 U.S.C. § 411(a)(6)(B) (1988); *see also* Treas. Reg. § 2510.3–3(d)(3)(i) (1992) (implementing regulation). Even assuming that the Plan document actually imposed such a requirement, its existence fails to defeat the plaintiffs' benefit claims. If the plaintiffs had been rehired prior to the expiration of their individual parity periods, and then had satisfied the additional service requirement, ERISA would have mandated that their prior service credits be counted. *See* 29 U.S.C. § 1052(b)(3) ("service before such break shall not be required to be taken into account ... until he has completed a year of service after his return"). The break-in-service rule merely delays the recording of prior service credits; it does not extinguish those credits.

The cases upon which the defendants rely are inapposite. Our decision in *Kuntz v. Reese*, 785 F.2d 1410 (9th Cir.) (per curiam), *cert. denied*, 479 U.S. 916, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986), merely held that a participant cannot complain that a plan trustee breached a fiduciary duty when that participant has received the benefits due him or her under the plan. *Id.* at 1411; *Teagardener v. Republic–Franklin Inc. Pension Plan*, 909 F.2d 947 (6th Cir.1990), *cert. denied*, 498 U.S. 1027, 111 S.Ct. 678, 112 L.Ed.2d 670 (1991), did not involve the vesting rule at issue here; moreover, the former employees in that case had received cash for their accrued benefits when they lost their jobs. *Id.* at 952. *Ashenbaugh v. Crucible Inc., 1975 Salaried Retirement Plan*, 854 F.2d 1516 (3d Cir.1988), *cert. denied*, 490 U.S. 1105, 109 S.Ct. 3155,

---

5. Congress has given special attention to ensuring the integrity of multiemployer plans like this one. *See Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. 211, 214–17, 106 S.Ct. 1018, 1020–22, 89 L.Ed.2d 166 (1986) (discussing enactment of Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C.A. § 1381–1461 (West 1985 & Supp.1993)).

104 L.Ed.2d 1019 (1989), rejected the claims of former workers that they were entitled to a supplemental retirement benefit. *Id.* at 1520–21. The question before us is not to which benefits, nor to what amount of benefits, the plaintiffs might be entitled. The question is whether they have a right to benefits at all. *Ashenbaugh* noted the difference between those questions when it contrasted the accrual and the vesting of benefits. *See id.* at 1524 ("Vesting provisions do not affect the amount of the accrued benefit ... Accrual provisions provide a formula for calculating [that] amount") (quotation and citation omitted).

As we mentioned, the Third Circuit recently considered an argument similar to the one presented here. Laid off workers in *Shawley v. Bethlehem Steel Corp.*, 989 F.2d 652 (3d Cir.1993), maintained that the rule of parity had preserved their past credited service, and that upon a partial or complete termination of their plan, the accrued benefits connected to that service would vest under IRC § 411(d)(3). *Shawley* rejected the argument, not because it was an unreasonable one, *see id.* at 657, but because no plan termination had occurred during the parity period. *Id.*

*Shawley* also rejected the workers' argument that "but for" Bethlehem's refusal to rehire them, they might have returned to work and achieved vesting, presumably through satisfaction of a standard length of service requirement. *Id.* at 658–59. The Third Circuit reasoned that Bethlehem's refusal to rehire the workers "did not 'in and of itself' strip plaintiffs of their employee status." *Id.* at 659 (quoting *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1222 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 68, 121 L.Ed.2d 35 (1992)).[6] "Plaintiffs were not terminated, constructively discharged, or tricked into retiring ...," said the court. "[T]hey were laid off because of an economic downturn in the steel industry." *Shawley,* 989 F.2d at 659.

A "but for" theory of standing is far more appropriate in this case than it was in *Shaw-*

*ley.* Flanagan and Missett do not challenge their failure to be rehired per se. Rather, they argue that the Plan's termination—an event which never took place in *Shawley* — deprived them of an opportunity to be rehired within the parity period. More important, the Plan termination denied them an opportunity to revive their past service credits. The rule of parity places no burden upon a covered employer to rehire laid-off workers. But the rule does guarantee a laid-off worker a specified period during which, if he or she resumes covered employment, and meets any break-in-service requirement, those credits can be reclaimed. The Plan termination cut short that guarantee.

Thus, it is irrelevant that Flanagan and Missett did not actually return to work during the parity period. Once the Plan had terminated, their return to work could not have revived their prior service credits. We cannot speculate what they might have done had the Plan not terminated. Nor does their entitlement to benefits depend upon the satisfaction of a break-in-service rule. We reiterate that a break in service may put off, but not prevent, vesting as a result of a plan termination.

The plaintiffs in this case were "affected participants" under the Plan, whose accrued benefits became nonforfeitable upon the Plan's termination. They are entitled to maintain this action for benefits under the Plan.

## C

■ We also conclude that the plaintiffs timely pursued their causes of action. The district court did not decide the timeliness of the complete termination claims. Because the question is a legal one, for which the relevant portion of the record is fully developed, we address it now. *White v. McGinnis,* 903 F.2d 699, 700 n. 4 (9th Cir.) (en banc), *cert. denied,* 498 U.S. 903, 111 S.Ct. 266, 112 L.Ed.2d 223 (1990). The dispositive issue is whether a state or federal statute of

6. The Fifth Circuit in *Christopher* relied in part upon our decision in *Amalgamated Clothing and Textile Workers v. Murdock,* 861 F.2d 1406 (9th Cir.1988), to fashion a "but for" theory of ERISA standing. *See Christopher,* 950 F.2d at 1221, 1222.

limitation applies to the complete termination claim.

To determine the timeliness of the *partial* termination claim, the district court selected a six-year state statute of limitation, rather than a limitation provision contained in ERISA. The ERISA provision mandates application of either a three or a six-year period, depending upon the facts of each case. By its terms, the provision applies only to a claim which alleges a breach of fiduciary duty. *See* 29 U.S.C. § 1113(a) (1988). That statute has not been applied to claims for benefits made against a plan itself.

We consider this question squarely for the first time,[7] and we determine that the state statute limiting contract actions applies. Our answer is the same as that adopted in every Circuit that has considered the timeliness of a benefits claim under ERISA.[8]

*Phillips v. Alaska Hotel & Restaurant Employees' Pension Fund*, 944 F.2d 509 (9th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1942, 118 L.Ed.2d 548 (1992), requires no different result. There we applied the ERISA provision to claims made under section 302 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 186. *Phillips*, 944 F.2d at 520 (citing *Kwak v. Joyce*, 683 F.Supp. 1546, 1549 (N.D.Ill.1988)). The LMRA situation, as *Kwak* explains, presents a special case in which application of a state limitation would frustrate federal policies embodied in that statute. *Kwak*, 683 F.Supp. at 1549–50. *Kwak* distinguishes, without criticizing, cases holding that a claim arising under ERISA section 502 is governed by a state statute of limitation. *See id.* at 1548. Whatever the merits of the *Kwak* approach in the context of the LMRA, *see, e.g., Martin v. Construction Laborer's Pension Trust for So. Cal.*, 947 F.2d 1381, 1384 (9th Cir.1991) (applying state limitation to a section 302

LMRA claim without mention of *Phillips*), that issue is irrelevant to the question before us.

The Plan fails to explain adequately how the ERISA limitations upon fiduciary actions provide a closer analogy to this case than a state limitation upon contract actions. *See Gonzalez v. Aloha Airlines*, 940 F.2d 1312, 1315 (9th Cir.1991) (citing *Reed v. United Transp. Union*, 488 U.S. 319, 324, 109 S.Ct. 621, 625, 102 L.Ed.2d 665 (1989)). Indeed, several courts which have applied state limitations to cases arising under ERISA § 502(a)(1)(B) have analogized those cases to contract actions. *E.g., Johnson v. State Mut. Life Assurance Co. of Am.*, 942 F.2d 1260, 1262–63 (8th Cir.1991) (en banc) (rejecting argument that section 502(a)(1)(B) actions are analogous to breach of trust cases); *see also Firestone*, 489 U.S. at 112, 109 S.Ct. at 955 ("[a]ctions challenging an employer's denial of benefits before the enactment of ERISA were governed by principles of contract law"). Nor has the Plan made a clear showing that federal policies or litigation necessities merit application of the ERISA provision. *Gonzalez*, 940 F.2d at 1314–15.

We therefore apply the six-year limitation period contained in Wash.Rev.Code § 4.16.-040. Because plaintiffs were given no advance notice, the earliest event that could have conferred a right of action upon them and started limitations running with regard to full termination was that termination itself. The Plan fully terminated in 1985, and the plaintiffs brought this action in 1990. Thus, the benefit claims before us are timely. Because the plaintiffs have acted in a timely manner to pursue benefits that the Plan rendered nonforfeitable, we reverse the summary judgment on the plaintiffs' claims against the Plan.

---

7. We applied the ERISA statute of limitation, with no discussion and no apparent consideration of an alternative, in *Meagher v. IAM Pension Plan*, 856 F.2d 1418, 1421 (9th Cir.1988), *cert. denied,* 490 U.S. 1039, 109 S.Ct. 1943, 104 L.Ed.2d 414 (1989).

8. *Hogan v. Kraft Foods*, 969 F.2d 142, 145 (5th Cir.1992); *Meade v. Pension Appeals & Review Comm.*, 966 F.2d 190, 194–95 (6th Cir.1992); *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1179 (3d Cir.1992); *Johnson v. State Mut. Life Assurance Co. of Am.*, 942 F.2d 1260, 1261–63 (8th Cir. 1991) (en banc); *Lumpkin v. Envirodyne Industries, Inc.*, 933 F.2d 449, 465–66 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 373, 116 L.Ed.2d 324 (1991); *Wright v. Southwestern Bell Tel. Co.*, 925 F.2d 1288, 1290–91 (10th Cir.1991); *Dameron v. Sinai Hosp. of Baltimore*, 815 F.2d 975, 981 (4th Cir.1987).

## III

We do not reach the benefit claims that arose from the alleged partial termination. We neither determine whether a partial termination occurred, nor explain how such a determination is made. We can say that upon the record presented to us, a partial termination would have had no adverse effect upon the rights of these plaintiffs.

A partial termination either would have made the plaintiffs' accrued benefits nonforfeitable, or in the alternative, would have preserved them for possible revival had the plaintiffs resumed work during the parity period. Because we have been shown no adverse consequences that would start a limitations period running, we are certain that none of the plaintiffs' benefit claims would be barred by a partial termination. Any favorable effects that partial termination may have had on the plaintiffs are preserved in their claims arising from complete termination.[9]

## IV

In neither of its summary judgment orders did the district court address the merits or the timeliness of the fiduciary duty claims. We decline to reach those questions in this appeal. They are for the district court to consider in the first instance. *Pullman–Standard v. Swint*, 456 U.S. 273, 291–92, 102 S.Ct. 1781, 1791–92, 72 L.Ed.2d 66 (1982).

## V

Because we reverse in toto, the plaintiffs are entitled to tax their costs on appeal. Fed.R.App.P. 39(a). Both the plaintiffs and defendants seek attorney's fees for this appeal under 29 U.S.C. § 1132(g)(1). We reject the defendants' fee request because we see no justification, on this record, to displace our common perception that attorney's fees should not be charged against ERISA plaintiffs. *Tingey v. Pixley–Richards West, Inc.*, 958 F.2d 908, 909 (9th Cir.1992).

We also decline to award the plaintiffs their fees for this appeal at this stage of the litigation. Assuming without deciding that the plaintiffs satisfy a sufficient number of the five factors we consider in determining the propriety of a fee award under ERISA, *see Losada v. Golden Gate Disposal Co.*, 950 F.2d 1395, 1401 (9th Cir.1991),[10] we nonetheless conclude that a fee award is inappropriate now because they have not established a right to benefits, nor shown that the Plan or its fiduciaries have violated ERISA.

"We have said in dictum that [the ERISA fee provision] permits an award of fees to a non-prevailing party." *Phillips*, 944 F.2d at 521. Even if the prevailing party requirement does not apply wholesale in the ERISA context, however, the plaintiffs cannot recover fees under section 1132(g)(1) until they "succeed on any significant issue in litigation which achieves some of the benefit [they] sought in bringing suit." *Smith v. CMTA–IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir.1984) (*Smith II*) (quotation omitted).

In *Smith*, there had been a finding that an employer had violated ERISA, *see Smith v. CMTA–IAM Pension Trust*, 654 F.2d 650, 653–54, 656–60 (9th Cir.1981) (*Smith I*), and we accordingly directed the district court to reconsider its denial of fees to Smith. *Smith II*, 746 F.2d at 591. Here, unlike the situation in the *Smith* appeals, there has been no determination yet that these employers violated ERISA. Reversal of summary judgment, on grounds of standing and limitations, is analogous to a remand of a benefits claim to an administering agency, *e.g., Sullivan v. Hudson*, 490 U.S. 877, 892, 109 S.Ct. 2248,

9. We are unaware of any plaintiffs who may have been within their individual parity periods at the time of the alleged partial termination, but who could no longer benefit from the rule of parity when the Plan fully terminated. We express no opinion on the rights of such persons, if in fact they do exist.

10. Those factors are:
(1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of fees; (3) whether an award of fees against the opposing party would deter others from acting under similar circumstances; (4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the Parties' positions.
*Id.*

2257, 104 L.Ed.2d 941 (1989), or the reversal of a directed verdict, *e.g., Hanrahan v. Hampton,* 446 U.S. 754, 758–59, 100 S.Ct. 1987, 1989–90, 64 L.Ed.2d 670 (1980), neither of which is a sufficient basis for a fee award.

Accordingly, we determine that a fee award for this appeal is premature. The district court may award the plaintiffs fees (including fees for this appeal) at a later date if the plaintiffs establish that the defendants have violated ERISA.

**REVERSED AND REMANDED.**