Robert **MARDIROSSIAN**, Plaintiff,

v.

The **GUARDIAN LIFE INSURANCE COMPANY OF AMERICA;** Hirsch Pipe and Supply Co., Inc. Long Term Disability Plan; Hirsch Pipe and Supply Co., Inc. Medical Plan; Hirsch Pipe and Supply Co., Inc. Life Insurance Plan; Hirsch Pipe and Supply Co., Inc. Pension/Retirement Plan, Defendants.

No. CV 05–02871 MMMJCX.

United States District Court,
C.D. California.

Oct. 18, 2006.

Glenn R. Kantor, Kantor & Kantor, Northridge, CA, for Plaintiff.

Daniel W. Maguire, Edith S. Shea, Galton & Helm, Los Angeles, CA, for Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

MORROW, District Judge.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On April 19, 2005, plaintiff Robert Mardirossian filed this action against The Guardian Life Insurance Company of America, Hirsch Pipe and Supply Co., Inc. Long Term Disability Plan, Hirsch Pipe and Supply Co., Inc. Medical Plan, Hirsch Pipe and Supply Co., Inc. Life Insurance Plan, and Hirsch Pipe and Supply Co., Inc. Pension/Retirement Plan.[1] Mardirossian

---

1. The parties subsequently stipulated to the dismissal of all defendants except Guardian.

challenged the denial of his claim for long-term disability ("LTD") benefits under an employee benefit plan established by Hirsch Pipe and Supply Company, Inc. He invoked federal jurisdiction under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA").

■ Guardian based its denial of Mardirossian's claim on his failure to notify it of his disability within twenty days, as required by the plan.[2] Mardirossian acknowledged that he had not provided notice until December 23, 2003, more than a year after he first experienced back pain.[3] He argued, however, that Guardian should have considered his claim on the merits because his late notice did not prejudice its ability to investigate the claim.[4] Under California's notice-prejudice rule, an insurance company may not avoid liability on the basis of untimely notice unless it proves that it has been actually and substantially prejudiced by the delay. See *Cisneros v. UNUM Life Ins. Co. of America*, 134 F.3d 939, 944 (9th Cir.1998); *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal.App.4th 715, 760–61, 15 Cal.Rptr.2d 815 (1993).

On June 6, 2006, the court denied Guardian's motion for summary judgment and *sua sponte* entered summary judgment in Mardirossian's favor. The court found that Guardian had abused its discretion in denying Mardirossian's LTD claim on the basis of late notice and proof of loss, because it did not document that it suffered actual prejudice as a result of the late notice.[5] Accordingly, the court re-

manded the claim to Guardian for reconsideration.

Mardirossian has now moved for an interim award of attorneys' fees. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7–15, the court finds this matter suitable for decision without oral argument.

## II. DISCUSSION

### A. Legal Standard Governing Attorneys' Fees Awards Under 29 U.S.C. § 1132(g)

■ In any action brought by a plan participant, beneficiary, or fiduciary under the Employee Retirement Income Security Act ("ERISA"), "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g). Interpreting this statute, the Ninth Circuit has held that a successful ERISA participant who "prevails in his suit … to enforce his rights under his plan should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Smith v. CMTA–IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir.1984); see also *McElwaine v. U.S. West, Inc.*, 176 F.3d 1167, 1172 (9th Cir.1999) (detailing the "special circumstances rule").[6]

### 1. Whether Mardirossian Is A Prevailing Party

■ "As a general rule," ERISA plaintiffs are entitled to an award of attorneys' fees "if they succeed on any signifi-

---

**2.** Order Denying Defendant's Motion for Summary Judgment, *Sua Sponte* Granting Summary Judgment for Plaintiff and Remanding to the Plan Administrator for Further Consideration ("Order"), June 5, 2006, at 5, 9–10.

**3.** *Id.*

**4.** *Id.* at 16.

**5.** *Id.* at 15, 23.

**6.** Not all circuits recognize this "special circumstances" rule. See, e.g., *Ellison v. Shenango Incorporated Pension Board*, 956 F.2d 1268, 1274 (3rd Cir.1992) (declining to adopt the "special circumstances" rule employed in the Fourth, Eighth, and Ninth Circuits).

cant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Smith*, 746 F.2d at 589 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). ERISA plaintiffs may also obtain interim fees by prevailing on the merits of at least some of their claims. *Frei v. Hartford Life Ins. Co.*, No. C-05-01191 EDL, 2006 WL 1409360, *1 (N.D.Cal. May 23, 2006) (citing *Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1468-69 n. 15 (9th Cir. 1995) ("We hold that interim attorney's fees are available under ERISA to the extent that they are available under civil rights statutes")); see also *Hanrahan v. Hampton*, 446 U.S. 754, 758, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980) (per curiam) (holding that in enacting 42 U.S.C. § 1988, "Congress intended to permit the interim award of counsel fees only when a party has prevailed on the merits of at least some of his claims"). A "prevailing party" is one that achieves "a material alteration of the legal relationship of the parties." *Frei*, 2006 WL 1409360 at *1 (quoting *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources*, 532 U.S. 598, 604, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001)).[7]

Relying on *Flanagan v. Inland Empire Electrical Workers Pension Plan & Trust*, 3 F.3d 1246 (9th Cir.1993), Guardian argues that Mardirossian is not entitled to interim fees because he has not established a right to benefits or shown that Guardian violated ERISA. In *Flanagan*, the Ninth Circuit held that plaintiffs had standing to sue as "affected participants" under a plan and remanded the case to district court for further consideration. *Id.* at 1253-54. The court declined to award attorneys' fees upon remand, concluding that an award would be premature because plaintiffs had "not established a right to bene-

---

7. The Supreme Court in *Buckhannon* held that "a 'prevailing party' [was] one who ha[d] been awarded some relief by the court," and that "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lack[ed] the necessary judicial imprimatur on the change" to warrant an award of fees. See *Buckhannon*, 532 U.S. at 602, 605, 121 S.Ct. 1835. Because ERISA does not use the term "prevailing party," some courts have expressed uncertainty as to whether *Buckhannon* applies to requests for fees under ERISA. See, e.g., *Adams v. Bowater, Inc.*, 313 F.3d 611, 615 (1st Cir.2002) ("Whether the plaintiffs can recover attorney's fees does not necessarily depend on whether a formal judgment has been entered. The Supreme Court did require a judgment under one statute *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 600, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), but the ERISA statute is differently phrased and conceivably the result could be different"); *Bridge v. Transpersonnel, Inc.*, No. 03 C 2437, 2004 WL 2034075, *5 (N.D.Ill. Sept. 10, 2004) (questioning whether *Buckhannon* applies to ERISA); *Trustees of the E. States Health and Welfare Fund v. Crystal Art Corp.*, No. 00 Civ. 0887(NRB), 2004 WL 1118245, *4 (S.D.N.Y. May 19, 2004) (*Buckhannon's* prevailing party analysis not relevant to fee award under § 1132(g) because the statute, "by its terms, does not limit fee awards to prevailing parties" and "does not include the term 'prevailing party'"); aff'd., 132 Fed. Appx. 390 (2d Cir.2005); *Reed v. Shenandoah Mem'l Hosp.*, No. 8:01CV435, 2002 WL 1964826, *2 (D.Neb. Aug. 12, 2002) (declining to decide whether *Buckhannon* applied to ERISA fee awards). Because the Ninth Circuit utilizes a form of "prevailing party" rule in assessing the availability of interim fees in ERISA (and civil rights) cases, however, use of the *Buckhannon* definition is appropriate in this context. See *Clark v. Metropolitan Life Ins. Co.*, 384 F.Supp.2d 894, 897 (E.D.Va. 2005) (finding that *Buckhannon* applied in an ERISA case based on the Fourth Circuit's rule that "only a prevailing party is entitled to consideration for attorneys' fees in an ERISA action"); *Kerkhof v. MCI WorldCom, Inc.*, 204 F.Supp.2d 74, 74-75 (D.Me.2002) (declining to decide whether *Buckhannon* was binding in ERISA cases, but recognizing that the First Circuit required an ERISA plaintiff to "prevail" in order to obtain an attorneys' fee award).

fits, nor shown that the Plan or its fiducia- ries ... violated ERISA." *Id.* at 1253. See also *Saffle v. Sierra Pacific Power Co. Long Term Disability Income Plan*, 85 F.3d 455, 460–61 (9th Cir.1996) (reversing the district court's order to pay benefits, directing that the court remand to the administrator for further consideration, and declining to award fees on appeal as "premature"); *Patterson v. Hughes Aircraft Co.*, 11 F.3d 948, 951 n. 4 (9th Cir. 1993) (ordering the district court to remand a benefits claim to the plan for reconsideration and summarily declining to award fees on appeal).

Here, unlike *Flanagan*, the court has expressly found that Guardian violated ERISA. In its June 6, 2006 order, the court concluded that Guardian abused its discretion in denying Mardirossian's claim.[8] See *Frei*, 2006 WL 1409360 at *3 (finding that plan administrators had abused their discretion and thus violated ERISA by applying an incorrect definition of "total disability" and that plaintiff was therefore entitled to interim fees). As a result, Mardirossian is more like the plaintiff in *White v. Jacobs Engineering Group Long Term Disability Benefit Plan*, 896 F.2d 344 (9th Cir.1989), than the plaintiff in *Flanagan*. In *White*, the Ninth Circuit reversed the district court's entry of summary judgment in favor of defendant on the ground that plaintiff had not timely exhausted his administrative remedies. *Id.* at 352. The court held that the benefits termination notice the plan sent to plaintiff was not sufficiently specific to trigger the running of the 60–day period for appeal. *Id.* at 350. As a result, it ordered the district court to remand the claim to the plan for further consideration, and awarded interim fees to plaintiff because he had prevailed on a significant issue. *Id.* at 352.

■ Guardian contends that the court's determination that it abused its discretion by denying the claim on the basis of late notice does not constitute a finding that it violated *ERISA*. Specifically, it asserts, in determining that remand was appropriate, the court applied principles of California law, not ERISA law. This argument is unavailing. Under Supreme Court precedent, a state notice-prejudice rule is effectively deemed to be term of the ERISA insurance contract. See *UNUM Life. Ins. Co. v. Ward*, 526 U.S. 358, 376, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999) ("We have repeatedly held that state laws mandating insurance contract terms are saved from preemption under § 1144(b)(2)(A). Under [UNUM's] interpretation of § 1104(a)(1)(D), however, States would be powerless to alter the terms of the insurance relationship in ERISA plans; insurers could displace any state regulation simply by inserting a contrary term in plan documents. This interpretation would virtually rea[d] the saving clause out of ERISA" (internal quotation marks and citations omitted)); *Anderson v. Continental Casualty Co.*, 258 F.Supp.2d 1127, 1130 (E.D.Cal.2003) ("State law may provide the rule of decision in ERISA cases if it is covered by the saving clause," citing *Ward*).

■ Stated differently, California's notice-prejudice rule is incorporated into Mardirossian's ERISA contract by operation of law. Thus, by finding that Guardian violated California's notice-prejudice rule, the court implicitly found that Guardian violated the terms of the ERISA contract. As Guardian acknowledges, a finding that the plan violated ERISA warrants an award of reasonable attorneys' fees. Compare *Frei*, 2006 WL 1409360 at *3 (finding that an interim fee award was appropriate because the plan violated ERISA) with *Flanagan*, 3 F.3d at 1253

---

8. Order at 23.

(concluding that a fee award was not appropriate because plaintiff had "not established a right to benefits, nor shown that the Plan or its fiduciaries ... violated ERISA")

Moreover, by holding that Guardian abused its discretion, the court "altered the legal relationship of the parties in that [Guardian] is now under court order to reconsider [Mardirossian's] disability benefits claim in accordance with the remand order." *Frei*, 2006 WL 1409360 at *2. For this reason, it is clear that Mardirossian succeeded on a significant issue in the litigation, i.e. establishing that Guardian's benefits determination violated ERISA. He also achieved part of the relief he sought, i.e. a redetermination his benefits claim. These successes render Mardirossian a "prevailing party" who is entitled to an award of interim fees.[9]

## 2. Whether The Court Should Exercise Its Discretion To Grant Attorneys Fees

■ In exercising its discretion under § 1132(g), and applying the special circumstances rule, the court takes into account certain factors first enumerated in *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir.1980). These are: "(1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of fees; (3) whether an award of fees would deter others from breaching duties under similar circumstances; (4) whether the party requesting fees sought to benefit all plan participants of an ERISA plan or resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions." *California Ironworkers Field Pension Trust*, 259 F.3d 1036, 1048 (9th Cir.2001) (citing *Hummell*, 634 F.2d at 453). None of the *Hummell* factors is necessarily decisive, and various permutations and combinations can support an attorneys' fees award. *Paddack v. Morris*, 783 F.2d 844, 846 (9th Cir.1986).

■ The weight of the *Hummell* factors in this case supports awarding Mardirossian his attorneys' fees. The first factor, bad faith, is neutral, as there is no evidence that Guardian acted in bad faith.

9. In support of its argument that Mardirossian is not a "prevailing party" entitled to interim fees, Guardian asks the court to take judicial notice of an unpublished Ninth Circuit opinion: *Kistler v. Financial Amer. Group. Long Term Disability Plan*, 35 Fed. Appx. 516 (9th Cir.2002). Mardirossian objects to this request on the grounds that unpublished opinions may not be cited in the Ninth Circuit. Should the court consider *Kistler*, Mardirossian asks that it also review *Mizzell v. Provident Life & Acc. Ins. Co.*, 32 Fed.Appx. 352 (9th Cir.2002). The court declines both requests. See Ninth Cir. R. 36–3 ("*Unpublished dispositions and orders of this Court may not be cited to or by the courts of this circuit, except ... factual purposes, such as to show double jeopardy, sanctionable conduct, notice, entitlement to attorneys' fees, or the existence of a related case*"); *Sorchini v. City of Covina*, 250 F.3d 706, 708 (9th Cir. 2001) ("As the wording [of Rule 36–3] clearly indicates, this exception permits the citation to an unpublished disposition where the very existence of the prior case is relevant as to a *factual* matter to the case being briefed. As the list of example suggests, the factual purposes falling within this exception will almost always involve one or both of the parties to the pending case.... The rule does not permit the citation of an unpublished disposition for the purpose of providing 'notice' to the court of the existence of absence of legal precedent. If precedent were 'a fact' for purposes of the exception, then the exception would swallow up the rule. It would permit an argument such as this: 'I am not citing this unpublished disposition as precedent, but only to inform the court of the fact that a prior panel held precisely what I would like the court to hold in my case.' Obviously, this is not what the exception was meant to permit" (emphasis original)); *Frei*, 2006 WL 1409360, at *3 n. 1 (declining to consider *Kistler* and *Mizzell* ).

See *Smith*, 746 F.2d at 590 ("As there was no bad faith on either side, this factor should not have been considered decisive"); *Frei*, 2006 WL 1409360 at *3 ("There has been no finding or showing of bad faith, so this factor is not decisive and is, at most, neutral").

The second factor favors a fee award, however, because Guardian concedes that it is able to pay any fees awarded. Although Guardian argues that this fact alone is insufficient to support a fee award, the Ninth Circuit has suggested otherwise. In *Smith*, the court accorded great weight to the administrator's ability to pay, stating: "Based on this factor alone, absent special circumstances, a prevailing ERISA employee plaintiff should ordinarily receive attorney's fees from the defendant." *Smith*, 746 F.2d at 590. Guardian's conceded ability to pay therefore weighs heavily in favor of a fee award.

The third factor also favors Mardirossian. Guardian argues that awarding fees would not deter future breaches of duty, because it denied Mardirossian's claim for understandable reasons, e.g. Mardirossian's "very late notice." This argument ignores the fact that the court found that Guardian's denial constituted an abuse of discretion under California's notice-prejudice rule. A fee award would thus reinforce that ERISA plan administrators must consider that rule before denying claims that do not comply with plan notice provisions.

The fourth factor marginally favors Mardirossian. Although he did not seek benefits on behalf of other plan participants or for the plan as a whole, his initiative in challenging the plan's decision will benefit participants whose claims might otherwise be denied without an adequate showing of actual prejudice. In *Smith*, the court noted that this factor weighed in favor of awarding fees to an ERISA plaintiff because the "decision clarif[ied] the terms of a plan ... [and thus] benefit[ed] all participants and beneficiaries by settling a disputed provision or an ambiguity." *Smith*, 746 F.2d at 590. (noting that such clarifications are "helpful to the trustees in future administration, but often 'depend[ ] on a plaintiff's initiative in bringing suit,' " quoting *Carpenters Southern California Administrative Corp. v. Russell*, 726 F.2d 1410, 1416 (9th Cir. 1984)). Here, although the applicability of the notice-prejudice rule was not in doubt, given the Supreme Court's decision in *Ward*, the court's decision clarified the manner in which a plan must document purported prejudice before it may deny benefits on the basis of late notice. As a result, Mardirossian's litigation will assist plan fiduciaries to some degree in their future administration of plan benefits.

The final factor—the relative merits of the parties' positions—also favors a fee award, as the court concluded that Guardian abused its discretion in denying Mardirossian's benefits claim on late notice grounds.

Because four of the five *Hummell* factors weigh in favor of awarding Mardirossian his fees, the court concludes that an award of reasonable attorneys' fees is appropriate.

### B. Legal Standard Governing The Reasonableness Of Attorneys' Fees

■ Once a party has established that he is entitled to attorneys' fees, "[i]t remains for the district court to determine what fee is 'reasonable.' " *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* This is known as the lodestar figure, and

presumptively provides an accurate measure of reasonable fees. See *Harris v. Marhoefer,* 24 F.3d 16, 18 (9th Cir.1994); *Clark v. City of Los Angeles,* 803 F.2d 987, 990 (9th Cir.1986). In ERISA cases, reasonable attorneys' fees "are calculated using a hybrid lodestar/multiplier approach." *S.A. McElwaine v. U.S. West, Inc.,* 176 F.3d 1167, 1173 (9th Cir.1999).

A court applying this approach does not directly consider the multi-factor test developed in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974), and *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 69–70 (9th Cir. 1975).[10] Rather, as a first step, it determines the lodestar amount, which subsumes certain of the *Kerr/Johnson* factors, i.e., the novelty and complexity of the issues, the special skill and experience of counsel, the quality of the representation, and the results obtained. See *Blum,* 465 U.S. at 898–900, 104 S.Ct. 1541; *Clark,* 803 F.2d at 990–91 and n. 3; *Cunningham v. County of Los Angeles,* 879 F.2d 481, 484 (9th Cir.1988). Next, the court looks to the *Johnson/Kerr* factors that have not been subsumed in the lodestar calculation to determine whether to increase or reduce the presumptively reasonable lodestar fee. See *Clark,* 803 F.2d at 991. Increases or decreases are warranted in rare or exceptional cases. See *Blum v. Stenson,* 465 U.S. 886, 898–901, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Harris,* 24 F.3d at 18; *Clark,* 803 F.2d at 990–91.

### 1. The Lodestar Calculation

Madrossian seeks $20,150 in attorneys' fees. This amount includes 15.9 hours billed at $400.00 per hour by attorney Glenn R. Kantor, and 39.4 hours billed at $350.00 per hour by attorney Peter S. Sessions.[11] Madrossian also seeks additional fees of $2,450 for the estimated 7.0 hours Sessions will require to prepare a reply and attend oral argument on the motion.[12] Because the court believes the motion is suitable for decision without oral argument, it cannot grant Mardirossian's fee request for time spent preparing for and attending a hearing. Consequently, it reduces Mardirossian's supplemental fee request by 2.0 hours.

### a. Hourly Rate

Declarations regarding the prevailing market rate in the relevant community suffice to establish a reasonable hourly rate. See *Widrig v. Apfel,* 140 F.3d 1207, 1209 (9th Cir.1998); *Guam Soc'y of Obstetricians & Gynecologists v. Ada,* 100 F.3d 691, 696 (9th Cir.1996). A plaintiff must submit "satisfactory evidence ... that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum,* 465 U.S. at 895–96 n. 11, 104 S.Ct. 1541. The relevant community is that in which the district court sits. See *Schwarz v. Secretary of Health and Human Servs.,* 73 F.3d 895, 906 (9th Cir.1995).

**10.** Under the *Johnson/Kerr* test, the factors to consider in determining the amount of attorneys' fees awarded include: "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Kerr,* 526 F.2d at 70; see also *Johnson,* 488 F.2d at 717–19.

**11.** Billing Record, Declaration of Glenn R. Kantor ("Kantor Decl."), Exh. 3 at 65–58.

**12.** Kantor Decl., ¶ 18.

Kantor asserts that he has practiced law for twenty years, the majority of which time he has spent litigating ERISA-regulated group disability claims.[13] Since January 2004, he has billed at the rate of $400.00 per hour.[14] Sessions is an associate attorney who passed the California Bar Examination in 1997 and who specializes in insurance litigation.[15] Sessions bills at the rate of $350.00 per hour.[16]

In support of his contention that $400.00 and $350.00 are reasonable hourly rates for his attorneys' services, Madrossian submits the declarations of Gary C. Nawa, Daniel Feinberg, and Charles J. Fleishman.[17] These declarations were submitted in connection with a case recently decided by a court in this district: *Yambao v. Metro. Life. Ins. Co. et al.,* ED CV 02–1158 RT (SGLx) (C.D. Cal. Mar 25, 2005).[18]

Nawa asserts that he is a sole practitioner specializing in ERISA and construction-related litigation.[19] He has practiced law since 1975, when he graduated from Southwestern University School of Law.[20] Nawa states that he charged $350.00 per hour between 1998 and January 1, 2004 for his work on ERISA cases.[21] On January 1, 2004, he raised his hourly rate for ERISA litigation to $400.00 per hour, a rate his clients continue to pay.[22] When taking matters on contingency and flat fee bases, his fees range up to $500.00 or more per hour, depending on the individual circumstances of the case.[23]

Feinberg states that he is a shareholder in Lewis & Feinberg, P.C. in Oakland, California.[24] He graduated from Boalt Hall School of Law in 1988 and has focused on employee benefits law since then.[25] Feinberg has presented papers at a number of legal conferences and published articles in *The Practical Lawyer, ERISA Litigation Reporter, Labor Center Reporter,* and *Tax Management Compensation Planning Journal.*[26] He has also been a contributing author of *Employee Benefits Law* (2000 Supplement), published by the ABA Section of Labor and Employment Law.[27] Feinberg's current hourly rate for litigation matters is $450.00.[28]

Fleishman, who has practiced law since 1970 and devotes his practice to ERISA claims, asserts that his hourly rate is $400.00.[29] He believes this rate is reasonable in part because there are few attorneys in Los Angeles willing to work on behalf of claimants.[30] He also notes that the work is complex and that ERISA law changes frequently, requiring lawyers to spend many unbillable hours keeping abreast of changes in the law.

13. Kantor Decl., ¶ 2.

14. *Id.,* ¶ 6.

15. *Id.,* ¶ 7.

16. *Id.*

17. *Id.,* Exh. 1 (Declaration of Gary C. Nawa ("Nawa Decl."); Declaration of Daniel Feinberg ("Feinberg Decl."); Declaration of Charles J. Feinberg ("Feinberg Decl.")).

18. *Id.,* Exh. 2.

19. Nawa Decl., ¶ 1.

20. *Id.,* ¶ 2.

21. *Id.,* ¶ 5.

22. *Id.*

23. *Id.*

24. Feinberg Decl., ¶ 1.

25. *Id.,* ¶ 3.

26. *Id.,* ¶ 4

27. *Id.*

28. *Id.,* ¶ 6.

29. Fleishman Decl., ¶ 1.

30. *Id.*

Kantor also submits five recent opinions authored by judges in the Central District of California that have compensated his services at the rate of $400.00 per hour. In *Yambao*, decided May 25, 2005, Judge Robert J. Timlin concluded that Kantor's hourly rate of $400.00 was reasonable.[31] Judge Timlin again awarded Kantor $400.00 per hour in *Hieronymus v. Prudential Ins. Co. et al.*, No. ED CV 03–0666 RT (SGLx) (C.D.Cal. Aug. 23, 2005).[32] On March 31, 2005, Judge Gary A. Feess concluded that Kantor's $400.00 hourly rate was reasonable in *Broderick v. The Prudential Ins. Co. of America*, No. CV 04–0719 GAF (MANx) (C.D.Cal. Mar. 31, 2005).[33] On June 30, 2005, in *Cortes v. Metropolitan Life Ins. Co.*, No. CV 04–6362 NM (RZx), Judge Nora Manella also approved a $400 hourly rate for Kantor.[34] Finally, in *Opeta v. American Bankers Life Assurance Co. et al.*, No. CV 04–0083 WJR (AJWx) (C.D.Cal. Jan. 21, 2005), Judge William J. Rea found that Kantor's work was reasonably compensated at $400.00 per hour.[35]

Relying on Judge Percy Anderson's September 20, 2004 opinion in *Welch v. Metropolitan Life Ins. Co.*, CV 04–0084 (C.D.Cal. Sept. 20, 2004),[36] Guardian argues that Kantor's and Sessions' hourly rates of $400.00 and $350.00 are unreasonably high. In *Welch*, Judge Anderson reduced Kantor's rate to $250.00 per hour after finding that his requested rate might have been inflated to include a contingency multiplier, which is not permitted in ERISA attorneys' fee awards.[37]

There is no evidence before the court that Kantor's hourly rate reflects a contingency multiplier, as his requested rate of $400.00 per hour is well within the bounds of the "prevailing market rates" evidenced in the Nawa, Feinberg, and Fleishman declarations. Nawa, for example, asserts that his hourly fee for ERISA litigation matters is $400.00 per hour, while his contingency fees are $500.00 or more per hour.[38] See *Guam Society of Obstetricians and Gynecologists v. Ada*, 100 F.3d 691, 696 (9th Cir.1996) ("In setting the hourly rates, the district court properly considered declarations from [three] Guam attorneys regarding the prevailing market rates," each of whom stated that the rate charged by plaintiff's attorney was reasonable); *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1547 (9th Cir. 1992) ("We recently pronounced that declarations of the 'prevailing market rate in the relevant community ... [are] sufficient to establish the appropriate [billing] rate for lodestar purposes.' ... Here, the appellees produced numerous affidavits declaring that the fees sought by appellees' counsel, ... were well within the bounds of the 'prevailing market rates' that form the basis for a proper fee award.... The district court referred to several of those affidavits in granting appellees' counsel's requested rates"), vacated in part on other

**31.** Kantor Decl., Exh. 2.

**32.** *Id.*

**33.** *Id.*

**34.** *Id.*

**35.** *Id.* Guardian argues that these cases are "meaningless" because Kantor does not state the number of hours initially sought in his fee request nor the number of hours for which he was ultimately compensated. This argument goes to the reasonableness of the hours worked, not the reasonableness of the hourly rate.

**36.** Kantor Decl., Exh. 4.

**37.** *Id.* at 73 (citing *Cann v. Carpenters' Pension Trust Fund*, 989 F.2d 313, 318 (9th Cir. 1993) ("Thus, the award of attorneys' fees in this case could not properly have been enhanced for contingency")).

**38.** Nawa Decl., ¶ 5.

grounds, *Davis v. City and County of San Francisco*, 984 F.2d 345 (9th Cir.1993).

■■■ The reasonableness of Kantor's rate is reinforced by the recent opinions Mardirossian has submitted, all of which post-date Judge Anderson's determination in *Welch* that the prevailing market rate was $250.00, rather than $400.00, per hour. For these reasons, the court concludes that $400.00 per hour is a reasonable rate for Kantor's services.

Mardirossian has submitted no evidence that Sessions' rate of $350.00 per hour is reasonable for an associate attorney with nine years of legal experience, however. All of the declarations he submitted address the billing rates of partners and sole practitioners who have practiced for eighteen to thirty-six years. The cited cases, moreover, suggest that $350.00 per hour may be an unreasonably high rate for an attorney of Sessions' experience. In *Opeta v. American Bankers Life Assurance Co.*, for example, Judge Rea awarded fees at a hourly rate of $350.00 to an attorney who had sixteen years of experience, including eleven litigating ERISA matters.[39] In contrast, Sessions has nine years' experience as a practicing attorney, all of which have been spent litigating insurance matters. During that time, he has worked on both ERISA and non-ERISA matters.[40]

Given this gap in the evidence, the court concludes that Mardirossian has not met his burden of establishing the reasonableness of Sessions' billing rate. See *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir.2001) ("The burden is on the plaintiff to produce evidence 'that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation,'" quoting *Blum*,

465 U.S. at 895, 104 S.Ct. 1541). As a result, the court cannot award fees for Sessions' work on the basis of the present record. It will review the balance of the application, however, to determine whether the amount of time expended by both Kantor and Sessions was reasonable, and will direct Mardirossian to submit further evidence regarding the reasonableness of Sessions' rates. With that information in hand, the court can then make a final determination as to the amount of the attorneys' fees award.

### b. Reasonable Hours

A court may award attorneys' fees only for the number of hours it concludes were reasonably expended litigating the case. "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933. Mardirossian has attached an itemized accounting of the hours expended by his two attorneys on this case. Sessions asserts that he has reviewed the itemized list, and that it accurately reflects daily records of the work performed on this matter.[41]

Guardian objects to the fact that both attorneys attended, and billed for time spent at, the mediation in this case. Each attorney recorded 5.0 hours for the mediation held on January 25, 2006.[42] Guardian notes that it was represented by a single attorney at the session.

■■■ The Ninth Circuit has stated that "the participation of more than one attorney does not necessarily constitute an un-

---

**39.** Kantor Decl., Exh. 2 at 58, 60.

**40.** Declaration of Peter S. Sessions ("Sessions Decl."), ¶¶ 2–4.

**41.** *Id.*, ¶ 5.

**42.** Kantor Decl., Exh. 3 at 66–67.

necessary duplication of effort." *Kim v. Fujikawa,* 871 F.2d 1427, 1435 n. 9 (9th Cir.1989); *McGrath v. County of Nevada,* 67 F.3d 248, 255 (9th Cir.1995). However, duplication must typically be warranted by the complexity of the matter or by each attorney's distinct contributions to the case. See *Kim,* 871 F.2d at 1435 n. 9 ("Here, the participation of more than one attorney constituted a reasonable necessity, given the complexity of legal issues and the breadth of factual evidence involved in this case"); *Johnson v. University College,* 706 F.2d 1205, 1208 (11th Cir.1983) ("An award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation"); *McKenzie v. Kennickell,* 645 F.Supp. 437, 450 (D.D.C. 1986) (allowing compensation for two attorneys where multiple lawyers appeared at major oral arguments or hearings).

Mardirossian does not assert that the mediation was particularly complex or that his attorneys handled distinct aspects of the mediation. The court, moreover, believes that the case was relatively straightforward and involved a limited set of facts. It therefore concludes that the mediation could easily have been handled by Kantor alone and excludes the five hours billed for Sessions' attendance. See, e.g.,*Hart v. Bourque,* 798 F.2d 519, 523 (1st Cir.1986) (a prevailing party should not be compensated for fees incurred as a result of two or three lawyers attending a conference when only one lawyer was necessary); *In re Mullins,* 84 F.3d 459, 467 (D.C.Cir.1996) ("Three attorneys bill 2.5 hours each for attending a meeting together and, to avoid reimbursement for duplication of effort, we will deduct the fees incurred by the two lowest-billing attorneys"); *Dillenbeck v. Hayes,* 830 F.Supp. 673, 675–76 (N.D.N.Y. 1993) (although finding that it was reason-

able to employ co-counsel, the court reduced the requested fees in part because one of the lawyers was experienced and could have handled the trial without assistance); *McKenzie v. Kennickell,* 645 F.Supp. 437, 450 (D.D.C.1986) ("[w]hen plaintiffs chose to send two or three lawyers to sit silently in court beside the lead attorney, the defendant should not be charged for that time").

Guardian also questions the time Kantor and Sessions expended preparing Mardirossian's mediation brief, reviewing Guardian's mediation brief, and drafting Mardirossian's opposition to Guardian's summary judgment motion. Sessions spent 5.2 hours drafting the mediation brief, while Kantor billed 1.2 hours reviewing and revising the brief. Kantor billed 0.5 hours reviewing Guardian's mediation brief, while Sessions billed 0.6 hours for the same activity. Sessions recorded 9.5 hours for drafting and revising Mardirossian's opposition to Guardian's summary judgment motion, while Kantor spent 0.8 hours reviewing the document.[43]

It is common today to retain multiple attorneys to work on a case, and their time may be included in a fee award so long as they do not unreasonably duplicate each other's services. A review of the billing entries shows that Sessions drafted the mediation and opposition briefs, while Kantor reviewed and revised them. This division of labor reflects typical law firm practice and represents a reasonable effort to maximize the attorneys' comparative efficiencies. See, e.g., *American Petroleum Institute v. Environmental Protection Agency,* 72 F.3d 907, 916 (D.C.Cir.1996) (recognizing that "in most instances when associates are employed to work under the supervision of a partner, there is some duplication of time in that the associate must report and the partner must re-

---

**43.** Kantor Decl., Exh. 3 at 66–67.

view"); *Massachusetts Dept. of Public Health v. School Committee of Tewksbury,* 841 F.Supp. 449, 459 (D.Mass.1993) ("In general, conferences between an associate and a supervising partner are necessary to effective and diligent representation, and in the end reduce the amount of unnecessary time spent on a case"). The court concludes, however, that the time Sessions devoted to preparation of the mediation brief was excessive. As a result, it will reduce his time by 2.7 hours. It will also deduct the 0.6 hours Sessions spent reviewing Guardian's mediation brief, as it has previously concluded that it was not necessary for Sessions to participate in the mediation process.

Guardian does not dispute the reasonableness of Kantor's and Sessions' remaining entries. Having reviewed them, the court concludes that they reasonably reflect the time and effort required to litigate this case.

### III.  CONCLUSION

For the reasons stated, the court reduces Sessions' time by 8.3 hours to reflect the duplicative time billed by both attorneys to prepare for and attend the mediation, as well as the excessive time Sessions expended drafting the mediation brief. The court further reduces Sessions' time by 2.0 hours to reflect that the court will not hold oral argument on this motion. Mardirossian's motion for an award of attorneys' fees is otherwise granted. Mardirossian's counsel is directed to submit further evidence establishing the prevailing rate within the community for attorneys of Session's experience and skill on or before November 6, 2006. The court will issue a final order setting forth the amount of attorneys' fees awarded following receipt of this additional evidence.